**PACEMAKER PLASTICS CO., INC., et al., Plaintiffs,**

v.

**AFM CORPORATION, et al., Defendants.**

No. 5:01–CV–132.

United States District Court, N.D. Ohio, Eastern Division.

April 3, 2001.

---

Gordon D. Woolbert, II, Black, McCuskey, Souers & Arbaugh, Thomas W. Connors, Black, McCuskey, Souers & Arbaugh, Canton, OH, for Plaintiffs.

Mark J. Skakun, Buckingham, Doolittle & Burroughs, Philip R. Wiese, Buckingham, Doolittle & Burroughs, Ronald S Kopp, Roetzel & Andress, Stephen W. Funk, Roetzel & Andress, Akron, OH, for Defendants.

## OPINION

GWIN, District Judge.

With this opinion and related order, the Court rules on Defendants' motion to dismiss the shareholder derivative and breach of contract claims asserted against them by Plaintiffs Pacemaker Plastics Co. Inc., Thermal Foams, Inc., and Therma Foam, Inc.[1] [Docs. 7 and 13]. Because Plaintiffs

---

1. On February 8, 2001, Defendants Advance Foam Plastics, Inc., Big Sky Insulations, Inc., Branch River Foam Plastics, Inc., Contour Products, Inc., Pacific Allied Products, Ltd., Insulated Building Systems, Inc., Team Industries, Inc., Heartland EPS, Inc. d/b/a Heartland EPS, Inc., and Michael Tobin filed a motion to dismiss [Doc. 7]. On February 12,

do not fairly and adequately represent similarly-situated shareholders, the Court dismisses the Plaintiffs' derivative claim. And finding Plaintiffs lack standing to sue for breach of contract, the Court dismisses Plaintiffs' contract claims.

## I

This dispute arises from an abandoned corporate merger. Plaintiffs are shareholders in Defendant AFM Corporation, one of the corporations involved in the failed merger. They say several of their fellow shareholders took certain acts in supporting the merger that triggered AFM's stock redemption rights. With this action, Plaintiffs seek to assert these redemption rights on AFM's behalf.

Sixteen shareholders have equal ownership rights in AFM. Fifteen shareholders are corporations involved in the manufacture and sale of expanded polystyrene foam ("ESP") products and systems. The remaining shareholder is Michael Tobin, AFM's president.

AFM is structured to provide support services to its fifteen corporate shareholders. Such services include product development and marketing. One of the products developed by AFM, R–Control structural building panels, provided the impetus for the proposed merger underlying this action.

R–Control structural building panels are used in commercial and residential construction. AFM developed these panels, but its fifteen corporate shareholders generally manufacture and sell the panels. As shareholders, these fifteen companies re-

ceive the licensing rights to use AFM's technology and to sell AFM products.

The merger negotiations that give rise to Plaintiffs' claims began after a newly-formed company expressed interest in obtaining AFM's interest in the R–Control structural building panels. This new company, R Merger Company, Inc., was formed by three shareholders, two of whom also owned minority interests in two of AFM's corporate shareholders.[2] R Merger sought to acquire and more aggressively market the R–Control building panels.

Prior to gauging whether AFM's owners were interested in selling the R–Control brand of building panels, R Merger requested that each AFM shareholder agree to exclusively negotiate with R Merger for a specific time period. R Merger made this request through a proposed letter agreement dated November 30, 2000.

On December 18, 2000, R Merger principals met with the AFM shareholders. At this meeting, R Merger's shareholders generally described the outline of their desired acquisition agreement. They suggested that R Merger acquire AFM and then exclusively license all of its technology back to AFM, save the R–Control structural building panels. After R Merger's presentation, a straw poll showed that 13 of AFM's 16 shareholders had a general interest in entering into negotiations with R Merger. Plaintiffs Therma Foam and Therma Foams opposed any transaction. Plaintiff Pacemaker Plastics Co. abstained.

---

2001, Defendant AFM Corporation, incorporating the arguments asserted by its codefendants, moved for dismissal [Doc. 13]. In analyzing the grounds for dismissal, the Court consolidates these motions.

**2.** Timothy Feagan, Michael Terpak, and William Jaeger own R Merger. Feagan is the

president and a shareholder of Defendant Team Industries, Inc., which is an AFM shareholder. Terpak is the president an a shareholder of Defendant Insulated Building Systems, Inc., which is also an AFM shareholder.

On December 27, 2000, R Merger sent out proposed revisions to its earlier proposed letter agreement. This revised letter agreement proposal outlined the basic terms of the proposed acquisition and license-back. The letter agreement also included provisions calling for (1) confidentiality, (2) an exclusive negotiating period, and (3) a voting agreement executed by a majority of AFM's shareholders that confirmed their agreement "to vote in favor of the transaction" and providing "that the shareholders will cause AFM to eliminate any redemption rights that AFM may have with respect to AFM stock that may arise as a result of the transaction." The letter agreement states that only the confidentiality and exclusive negotiating period provisions were binding. The voting agreement provision stated that it was non-binding.

Nine AFM shareholders executed the letter agreements. But prior to any merger negotiations, R Merger rescinded its letter agreements on January 18, 2001. Each of the nine AFM shareholders agreed to the recission. As a result, there is no agreement for R Merger to acquire AFM. Nor are there any current negotiations for such an acquisition.

Plaintiffs nevertheless contend that the nine AFM shareholders triggered AFM's redemption rights by executing the letter agreements. These redemption rights are contained in stock redemption agreements previously executed between AFM and each of its shareholders.

The separate stock redemption agreements between AFM and its corporate shareholders are substantially similar. These agreements are designed to prevent unwanted ownership interests. Thus, the agreement allows a shareholder to sell its interest in AFM to any other shareholder.

But AFM has the right to redeem stock to prevent its sale to a non-related entity:

> No mortgagee, pledgee, Trustee in bankruptcy, or other person, individual or business entity, shall acquire any ownership or interest in Shareholder's Shares, and any attempt at any sale, transfer or other disposition of such Shares, voluntary or involuntary, shall constitute an irrevocable offer by Shareholder to sell the same to Company and Company shall thereupon redeem all Shares then owned by Shareholder.

Stock Redemption Agreement, Paragraph 4.

Michael Tobin's agreement differs. With regard to Tobin, AFM has a right of first refusal. His agreement provides that if he ever "desires to sell, encumber, transfer or otherwise dispose of any of his Shares," he must "first provide the Corporation and the other Shareholders with written notice [of the terms of the proposed sale] ... [and then] [f]or a period of sixty (60) days from the date of such Notice, the Corporation shall have the option to purchase all, but not less than all, of the Shares identified in such notice...."

According to Plaintiffs, the execution of the letter agreements with R Merger constituted an attempted sale of AFM stock. Thus, they say AFM is obligated to redeem the nine shareholders' AFM stock. From this, the plaintiffs assert (1) a shareholder derivative claim on behalf of AFM to enforce AFM's redemption rights, (2) a direct claim against defendants for breach of contract for failing to redeem their shares, and (3) a third-party beneficiary claim against defendants for breach of contract for failing to redeem their shares.[3]

---

**3.** Plaintiffs also assert a claim for declaratory relief that is related to their derivative and breach of contract claims.

## II

### A

Defendants first seek dismissal of Plaintiffs' shareholder derivative claim. They say Plaintiffs have failed to state a claim upon which relief can be granted. Thus, they seek dismissal under Fed.R.Civ.P. 12(b)(6).

Dismissal for failure to state a claim is appropriate only if it appears beyond doubt Plaintiffs can prove no set of facts that would entitle them to relief. *McLain v. Real Estate Bd. of New Orleans,* 444 U.S. 232, 246, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In deciding Defendants' Rule 12(b)(6) motion, the Court accepts all of Plaintiffs' factual allegations as true and construes the complaint in the light most favorable to Plaintiffs. *Sistrunk v. City of Strongsville,* 99 F.3d 194, 197 (6th Cir.1996); *Board of Trustees of Painesville Tp. v. City of Painesville,* 200 F.3d 396, 398 (6th Cir. 1999).

Plaintiffs assert a derivative claim as shareholders of AFM Corporation. A derivative action permits shareholders to bring suit to enforce a corporate claim after those controlling the corporation fail to take appropriate action. In a properly pled derivative action, the corporation is thus the real party in interest.

In bringing a derivative action, the shareholder usurps the role of the normal corporate decision maker—the board of directors. Because the shareholder nominates himself for the right to speak for the corporation, the shareholder derivative procedure set forth in Fed.R.Civ.P. 23.1 has safeguards to assure that the proceeding is truly in the best interests of the owner of the cause of action—the corporation itself.

One of these safeguards limits shareholder derivative actions to only those shareholders who "fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association. . . ." Fed.R.Civ.P. 23.1. Courts carefully enforce this limitation because the derivative plaintiff acts as a fiduciary for the remaining shareholders. *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 549, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) ("Likewise, a stockholder who brings suit on a cause of action derived from the corporation assumes a position, not technically as a trustee perhaps, but one of a fiduciary character."); *Owen v. Modern Diversified Industries, Inc.,* 643 F.2d 441, 444 (6th Cir.1981) ("The nature of the shareholder derivative action is fiduciary."); Mary Elizabeth Matthews, *Derivative Suits and Similarly–Situated Shareholder Requirement,* 8 DePaul Bus. L.J. 1, 6 (1995).

■ Recognizing the fiduciary nature of a derivative action, courts generally reject would-be derivative plaintiffs with interests that are not aligned with their fellow shareholders. *Davis v. Comed, Inc.,* 619 F.2d 588, 593–94 (6th Cir.1980). In particular, economic antagonism between the derivative plaintiff and other shareholders is typically fatal to a shareholder derivative suit. *Id.* at 594 ("A major 'type of antagonism requiring denial of certification is clear economic antagonism between representative and class.'") (quoting *Schnorbach v. Fuqua,* 70 F.R.D. 424, 433 (S.D.Ga. 1975)).

■ Here, the Court finds that Plaintiffs cannot fairly and adequately represent the interests of AFM shareholders. Even a cursory examination of Plaintiffs' derivative claim reveals their interests are dissimilar to the interests of their fellow shareholders.

In bringing their derivative claims, Plaintiffs seek to require AFM to redeem the shares of nine active shareholders, including the shares of AFM's president. If such a redemption occurs, these nine shareholders would have to surrender their ownership of AFM. Yet Plaintiffs would benefit by obtaining an increased share of AFM's ownership. This antagonism belies any claim that Plaintiffs can fairly and adequately represent AFM shareholders. *Cf. Torchmark Corp. v. Bixby*, 708 F.Supp. 1070, 1077 (W.D.Mo. 1988) (rejecting derivative claim brought by plaintiff whose "primary purpose in instigating this action is the acquisition of a controlling interest" in corporation); *Baron v. Strawbridge & Clothier*, 646 F.Supp. 690, 695 (E.D.Pa.1986) (rejecting derivative suit where putative plaintiff sought to acquire corporation and thus had interests that were "manifestly antagonistic" to those of fellow shareholders); *see also Tankersley v. Albright*, 80 F.R.D. 441 (N.D.Ill.1978) ("Generally, an action is derivative when the wrong sought to be redressed is primarily against the corporation, the whole body of stock or corporate property. On the other hand, where it appears that the injury is directly suffered by an individual shareholder or relates directly to an individual's stock ownership, the action is personal."); Charles Alan Wright, et al., Federal Practice and Procedure § 1821 (2d ed. 1986) ("An action that is not for the benefit of the corporation but merely seeks to enforce the rights of one or more shareholders against the corporation is not a derivative action.").

Having found that Plaintiffs cannot fairly and adequately represent their fellow shareholders, the Court need not consider Defendants' principal argument for dismissing Plaintiffs' shareholder derivative claim. In their motion to dismiss, Defendants say this case is not ripe for adjudication because AFM has not suffered an actual injury. Specifically, Defendants say no shareholder ever sold its shares of AFM stock to an unrelated owner, nor is any such sale pending. Absent a sale or imminent sale of AFM shares to an unrelated owner, Defendants say AFM has no injury.

Again, the Court has already found an adequate ground for dismissing Plaintiffs' derivative claim. Nevertheless, the Court notes that AFM's contractual right to redemption arose upon any "attempt" to sell AFM shares to an unrelated owner. Thus, whether such a sale ever actually occurred is immaterial to AFM's contractual rights. And though Defendants insist they did not attempt to sell their AFM shares, this issue is factual in nature and thus inappropriate for resolution at this stage of the case.

Accordingly, the Court dismisses Plaintiffs' derivative claim solely on the ground that they cannot properly represent AFM shareholders.

## B

Next, Defendants seeks dismissal of Plaintiffs' contract claims under Fed. R.Civ.P. 12(b)(6). They say Plaintiffs have not pled a breach of contract claim upon which relief can be granted.

With their breach of contract claims, Plaintiffs seek to enforce the stock redemption agreements executed between AFM Corporation and its individual shareholders. Plaintiffs were parties to their own redemption agreements with AFM, but they did not execute the redemption agreements running between AFM and the other shareholders. Nevertheless, Plaintiffs say they have power to enforce the redemption agreements involving their fellow shareholders.

Specifically, Plaintiffs assert two bases for their right to enforce the redemption agreements. In their first breach of con-

tract claim, Plaintiffs say they can enforce the agreements because the other shareholders' redemption agreements were consideration for Plaintiffs' decision to enter their own agreements. In their second breach of contract claim, Plaintiffs say they are third-party beneficiaries to AFM's redemption agreements with the other shareholders, and can thus enforce the same.

■ Turning to Plaintiffs' first breach of contract claim, the Court finds Plaintiffs fail to state a claim upon which relief can be granted. Plaintiffs lack standing to directly enforce AFM's redemption agreements with the other shareholders.

As Plaintiffs acknowledge, they are not parties to the other shareholders' stock redemption agreements; these agreements run solely between AFM and the other shareholders. And even if these agreements were consideration for Plaintiffs' decision to enter similar redemption agreements, Plaintiffs lack standing to enforce the contractual right to redeem the other shareholders' stock. That right belongs to AFM, not individual shareholders. *Arent v. Distribution Sciences, Inc.*, 975 F.2d 1370, 1374 (8th Cir.1992) (holding that, under Minnesota law, shareholders cannot enforce corporation's contracts unless they are parties or intended third-party beneficiaries to such contracts).

■ Likewise, Plaintiffs fail to state a claim with their second breach of contract claim. Under Minnesota law, which Plaintiffs concede govern the stock redemption agreements, a party can enforce a contract as a third-party beneficiary only when that contract expresses "some intent by the parties to benefit the third party through contractual performance." *Chard Realty v. City of Shakopee*, 392 N.W.2d 716, 720–

21 (Minn.Ct.App.1986). If a contract does not refer to a particular party, that party is not an intended beneficiary. *Id.*

The stock redemption agreements between AFM and the other shareholders do not refer to Plaintiffs. These agreements nowhere suggest, either explicitly or implicitly, an intent to benefit Plaintiffs. Thus, Plaintiffs cannot enforce the agreements as third-party beneficiaries.

For these reasons, the Court dismisses Plaintiffs' breach of contract claims.

### III

Plaintiffs fail to state claims upon which relief can be granted. They assert a shareholder derivative claim, but yet have interests opposed to those they claim to represent. They assert breach of contract claims, but yet lack the standing to enforce the contracts in question. Accordingly, the Court dismisses Plaintiffs' claims.[4]

IT IS SO ORDERED.

### JUDGMENT

The Court has entered its opinion in the above-captioned matter. For the reasons stated therein, the Court dismisses the claims asserted by Plaintiffs Pacemaker Plastics Co. Inc., Thermal Foams, Inc., and Therma Foam, Inc.

The Court hereby certifies that this case is terminated pursuant to Fed.R.Civ.P. 58.

IT IS SO ORDERED.

---

**4.** Having dismissed the derivative and breach of contract claims, the Court also dismisses

Plaintiffs' related claim for declaratory relief.