2003 UT App 377

**Jean LeVANGER and Rebecca LeVanger, Plaintiffs and Appellees,**

v.

**HIGHLAND ESTATES PROPERTIES OWNERS ASSOCIATION, INC.; et al., Defendants and Appellant.**

No. 20020090–CA.

Court of Appeals of Utah.

Nov. 6, 2003.

Paul M. Belnap and Andrew D. Wright, Strong & Hanni, Salt Lake City, for Appellant.

E. Jay Sheen, Robinson & Sheen, LLC, South Jordan, for Appellees.

Before Judges JACKSON, BENCH, and DAVIS.

## OPINION

DAVIS, Judge:

¶ 1 Highland Estates Properties Owners Association, Inc. (Highland Estates) appeals a trial court order granting Jean and Rebecca LeVanger (the LeVangers) attorney fees and costs. We reverse and remand.

1. On the issue of the LeVangers' standing under rule 23.1 of the Utah Rules of Civil Procedure, the trial court ruled: "Based upon the record before the [c]ourt, there are insufficient facts and insufficient grounds to, as a matter of law, determine that the plaintiffs are inappropriate parties to bring this action."

## BACKGROUND

¶ 2 The LeVangers are homeowners and members of Highland Estates. On January 21, 1997, the LeVangers filed a derivative action under rule 23.1 of the Utah Rules of Civil Procedure against Highland Estates and members of its Board of Trustees. The LeVangers' verified complaint alleged that the Board of Trustees had breached its fiduciary duty to Highland Estates and the members of Highland Estates by improperly amending Highland Estates's covenants, conditions, and restrictions (CC & Rs). The LeVangers' action sought damages, attorney fees, and rescission of the improper amendments to Highland Estates's CC & Rs.

¶ 3 Prior to the scheduled trial date, Highland Estates filed a motion for summary judgment on several grounds. The trial court held a hearing on this motion and made its ruling from the bench. On May 28, 1998, the trial court entered a written order, memorializing this ruling. The court granted the motion on the issue of the voting and approval process used in amending Highland Estates's CC & Rs, concluding that the actions taken by the Board of Trustees in amending the CC & Rs were "proper" and that the mail-in ballot voting procedure "substantially complied with [Highland Estates's] Bylaws and [CC & Rs] in place." The trial court denied the motion on the other grounds, including the LeVangers' lack of standing under rule 23.1.[1] After making its ruling from the bench at the summary judgment hearing, the trial court and the parties discussed the LeVangers' intention to seek certification of the trial court's decision as final and appealable under rule 54(b) of the Utah Rules of Civil Procedure.[2]

¶ 4 On March 3, 1999, the trial court entered an order and rule 54(b) certification. Although most of the order focused on a motion to reconsider filed by the LeVangers, it also contained the rule 54(b) certification, which stated that the trial court's May 28,

2. The discussion focused on the trial court's decision on the issue of the voting and approval process used in amending Highland Estates's CC & Rs.

1998 order was certified as final and appealable under rule 54(b).

¶ 5 Pursuant to the trial court's rule 54(b) certification, the LeVangers filed a notice of appeal. This court considered the LeVangers' appeal and issued a written opinion on April 13, 2000. *See Levanger v. Vincent,* 2000 UT App 103, 3 P.3d 187 (*LeVanger I* ). In *LeVanger I,* we held that the actions taken by the Board of Trustees in amending Highland Estates's CC & Rs, including the use of mail-in ballots, were improper. *See id.* at ¶¶ 12–19. Accordingly, we reversed the trial court's grant of Highland Estates's motion for summary judgment on the issue of the voting and approval process used in amending Highland Estates's CC & Rs. *See id.* at ¶ 23.

¶ 6 Based upon this court's decision in *LeVanger I,* the LeVangers filed a motion for summary judgment on remand. Among other things, this motion sought an award of attorney fees and costs incurred by the LeVangers in bringing the derivative action. Highland Estates then filed a motion for an evidentiary hearing on several issues, including: (1) whether the LeVangers had standing under rule 23.1; (2) whether the LeVangers' derivative action had conferred a substantial benefit upon Highland Estates; and (3) whether the LeVangers' attorney fees were reasonable.[3] The trial court conducted a hearing on both motions on June 26, 2001. After this hearing, a trial was scheduled for September 19, 2001, to address the unresolved issues in the case. At trial, both parties presented evidence to the trial court and, at the conclusion of trial, were instructed by the trial court to submit written closing arguments.

¶ 7 In a written ruling dated November 27, 2001, and an order entered on December 10, 2001, the trial court ruled on the unresolved issues in the case. The trial court determined that the LeVangers had standing as derivative plaintiffs under rule 23.1 because: (1) the issue of the LeVangers' standing "was effectively, if not expressly, decided by" an earlier trial court order which denied High-

land Estates's motion for summary judgment on that issue; (2) Highland Estates did not raise and the *LeVanger I* court did not address the issue in *LeVanger I,* and when the *LeVanger I* court reached the merits of the appeal, its "acceptance of [the LeVangers'] standing to bring the action [was] implicit in" its decision; and (3) Highland Estates did not "raise the issue at the Court of Appeals, or . . . file an appropriate motion on remand, both [of which] support a conclusion that [Highland Estates] did, in fact, waive the standing issue." The trial court also determined that the LeVangers' derivative action conferred a substantial benefit upon Highland Estates and, therefore, that the LeVangers were entitled to $41,327.15 in attorney fees and costs to be paid by Highland Estates. Highland Estates appeals.

## ISSUES AND STANDARDS OF REVIEW

■■■ ¶ 8 First, Highland Estates argues that the trial court erred in concluding that the LeVangers had standing as derivative plaintiffs under rule 23.1 of the Utah Rules of Civil Procedure.

[T]he question of whether a given individual or association has standing to request a particular relief is primarily a question of law, although there may be factual findings that bear on the issue. We will review such factual determinations made by a trial court with deference. *State v. Pena,* 869 P.2d 932, 935–36 (Utah 1994). Because of the important policy considerations involved in granting or denying standing, we will closely review trial court determinations of whether a given set of facts fits the legal requirements for standing, granting minimal discretion to the trial court. *Id.* at 938, 939.

*Kearns–Tribune Corp. v. Wilkinson,* 946 P.2d 372, 373–74 (Utah 1997).

■■■ ¶ 9 Second, Highland Estates argues that the trial court erred in concluding that the LeVangers' derivative action conferred a substantial benefit on similarly situated members of Highland Estates. The

---

3. Highland Estates is not arguing the reasonableness of the LeVangers' attorney fees as part of this appeal.

trial court's conclusion on this issue was the basis for its award of attorney fees and costs to the LeVangers. The determination of whether a substantial benefit is conferred in the context of a derivative action is a mixed question of law and fact, which requires a trial court to determine "whether a given set of facts comes within the reach of a given rule of law." *State v. Pena,* 869 P.2d 932, 936 (Utah 1994). "Although we review legal questions for correctness, we may still grant a trial court discretion in its application of the law to a given fact situation." *Jeffs v. Stubbs,* 970 P.2d 1234, 1244 (Utah 1998).

## ANALYSIS

### I. Standing

¶ 10 Highland Estates argues that the trial court erred in concluding that the LeVangers had standing as derivative plaintiffs under rule 23.1 of the Utah Rules of Civil Procedure. Rule 23.1 provides, in relevant part, that a "derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association." Utah R. Civ. P. 23.1. The trial court made several rulings in support of its determination that the LeVangers had standing under rule 23.1.

¶ 11 First, the trial court determined that the issue of the LeVangers' standing under rule 23.1 "was effectively, if not expressly, decided by" an earlier trial court order which denied Highland Estates's motion for summary judgment on this issue. In that order, the trial court ruled that "[b]ased upon the record before the [c]ourt, there are insufficient facts and insufficient grounds to, as a matter of law, determine that plaintiffs are inappropriate parties to bring this action."

¶ 12 Summary judgment is appropriate only when "there is no genuine issue as to any material fact and [when] the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(c). This standard is set out, in identical form, in rule 56(c) of both the Utah Rules of Civil Procedure and Federal Rules of Civil Procedure. *See* Fed. R.Civ.P. 56(c); Utah R. Civ. P. 56(c). Ac-

cordingly, "we freely refer to authorities which have interpreted the federal rule." *Gold Standard, Inc. v. American Barrick Res. Corp.,* 805 P.2d 164, 168 (Utah 1990); *see Tucker v. State Farm Mut. Auto. Ins. Co.,* 2002 UT 54,¶ 7 n. 2, 53 P.3d 947 ("Interpretations of the Federal Rules of Civil Procedure are persuasive where the Utah Rules of Civil Procedure are 'substantially similar' to the federal rules." (citations omitted)).

■ ¶ 13 The denial of a motion for summary judgment on an issue is not a final decision on the merits of that issue. *See Switzerland Cheese Ass'n v. E. Horne's Mkt., Inc.,* 385 U.S. 23, 25, 87 S.Ct. 193, 195, 17 L.Ed.2d 23 (1966) ("[T]he denial of a motion for a summary judgment because of unresolved issues of fact does not settle or even tentatively decide anything about the merits of the claim. It is strictly a pretrial order that decides only one thing—that the case should go to trial."); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2712 (3d ed. 1998 & Supp.2003) ("[A] denial of summary judgment is not a decision on the merits; it simply is a decision that there is a material factual issue to be tried."). Therefore, we conclude that the trial court erred in determining that the order denying Highland Estates's motion for summary judgment was a decision on the merits of the issue of the LeVangers' standing under rule 23.1.

■ ¶ 14 Second, the trial court determined that Highland Estates should have raised the issue of the LeVangers' standing under rule 23.1 before this court in *LeVanger I.* The trial court further determined that because our decision in *LeVanger I* did not address the LeVangers' standing, and because we reached the merits of the appeal, our "acceptance of [the LeVangers'] standing to bring the action is implicit in" our decision in *LeVanger I.* We disagree. The prior trial judge's March 3, 1999 "Order and Rule 54(b) Certification" was not a model of clarity in designating the claims certified to this court under rule 54(b) of the Utah Rules of Civil Procedure for purposes of *LeVanger I.* However, after reviewing this rule 54(b) certification and the record, we conclude that the trial court and the parties certified only the

issue of the voting and approval process used in amending Highland Estates's CC & Rs.[4] Because we conclude that the trial court's denial of Highland Estates's motion for summary judgment on the issue of the LeVangers' standing under rule 23.1 was not part of the rule 54(b) certification, Highland Estates was not required to address that issue in *LeVanger I.* Therefore, we conclude that the trial court erred when it determined that Highland Estates was required to raise the issue of the LeVangers' standing under rule 23.1 before this court in *LeVanger I.* It follows that the trial court also erred when it determined that this court's decision in *LeVanger I* implicitly granted the LeVangers standing under rule 23.1.

■ ¶ 15 Third, although the trial court stated that it "believe[d]" its reasoning up to this point was "dispositive of the standing issue," it went on to determine that Highland Estates's "failure to raise the issue at the Court of Appeals, or to file an appropriate motion on remand, both support a conclusion that [Highland Estates] did, in fact, waive the standing issue." Again, we disagree. As we noted earlier, Highland Estates was not required to address the issue of the LeVangers' standing in *LeVanger I.* Further, the record shows that on remand after *LeVanger*

*I,* Highland Estates filed both a motion for an evidentiary hearing and a motion for directed verdict based on several grounds, including the issue of the LeVangers' standing under rule 23.1. Finally, there is nothing in the record that suggests Highland Estates ever waived the issue of standing. Accordingly, we conclude that the trial court erred in determining that Highland Estates waived the issue of the LeVangers' standing under rule 23.1.

¶ 16 For the foregoing reasons, we hold that the trial court erred in concluding that the LeVangers had standing as derivative plaintiffs under rule 23.1 and remand the case with directions that the trial court conduct further proceedings on this issue.[5] To assist the trial court and the parties on remand, we provide the following guidance under rule 23.1. *See Williamson v. Williamson,* 1999 UT App 219, ¶ 12, 983 P.2d 1103 (providing guidance to trial court on remand).

■ ¶ 17 Although rule 23.1 requires that the plaintiff "fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association," Utah R. Civ. P. 23.1, it does not address the burden of

---

4. The record reveals that during the January 9, 1998 summary judgment hearing, the trial court and the parties discussed the LeVangers' intention to file a motion to certify the trial court's May 28, 1998 order as final and appealable under rule 54(b) of the Utah Rules of Civil Procedure. The parties and the trial court specifically discussed certifying the trial court's grant of Highland Estates's motion for summary judgment on the issue of the voting and approval process used in amending Highland Estates's CC & Rs; however, they did not discuss certifying the trial court's denial of Highland Estates's motion for summary judgment on the issue of the LeVangers' standing under rule 23.1.

5. In our colleague's dissent, he first equates a trial judge's inability to resolve an issue on summary judgment as a resolution of that issue. We believe this is inappropriate. *See Switzerland Cheese Ass'n v. E. Horne's Mkt., Inc.,* 385 U.S. 23, 25, 87 S.Ct. 193, 195, 17 L.Ed.2d 23 (1966) ("[T]he denial of a motion for a summary judgment because of unresolved issues of fact does not settle or even tentatively decide anything about the merits of the claim. It is strictly a pretrial order that decides only one thing—that the case should go to trial.").

He then concludes that when the legal standards of rule 23.1 are applied to the "undisputed evidence" in this case, the LeVangers do not have standing under rule 23.1. We believe this analysis is inappropriate since the trial court's ruling was grounded in law and procedure, not fact. Although evidence on both sides of the issue of standing was before the trial court, its ruling not only made no findings thereon, but also made no reference thereto. Consequently, we believe that our colleague's desire to consider and weigh the evidence presented at trial on the standing issue is inappropriate. *See Bailey v. Bayles,* 2002 UT 58, ¶ 20, 52 P.3d 1158 ("The court of appeals is limited to the findings of fact made by the trial court and may not find new facts or reweigh the evidence in light of [a] new legal theory or alternate ground."); *American Fork City v. Singleton,* 2002 UT App 331, ¶ 5, 57 P.3d 1124 (stating that "[t]rial courts are given primary responsibility for making determinations of fact," and that "[i]t is inappropriate for an appellate court ... to ... weigh[ ] evidence and mak[e] its own findings of fact" (second, third, and sixth alterations in original) (quotations and citations omitted)).

proof. Utah cases have not addressed this specific issue under rule 23.1. However, because rule 23.1 of both the Utah Rules of Civil Procedure and Federal Rules of Civil Procedure are substantively identical, *see* Utah R. Civ. P. 23.1 Compiler's Notes ("This rule is identical in substance to Rule 23.1, [Federal Rules of Civil Procedure].")*, we again "freely refer to authorities which have interpreted the federal rule." *Gold Standard, Inc. v. American Barrick Res. Corp.,* 805 P.2d 164, 168 (Utah 1990); *see Barton v. Utah Transit Auth.,* 872 P.2d 1036, 1039 n. 5 (Utah 1994) ("This court recognizes the persuasiveness of federal interpretations when the state and federal rules are similar and few Utah cases deal with the rule in question.").

¶ 18 The Court of Appeals for the Fifth Circuit addressed the burden of proof issue under rule 23.1 of the Federal Rules of Civil Procedure in *Smallwood v. Pearl Brewing Co.,* 489 F.2d 579 (5th Cir.1974). After quoting the relevant text of this rule, the *Smallwood* court stated:

> Although the district court is thus empowered to dismiss a derivative action should it appear that the plaintiff does not adequately represent the shareholders in enforcing the rights of the corporation, a finding in the alternative is not required before a derivative action may go forward. The burden is on the defendants to obtain a finding of inadequate representation....

*Id.* at 592–93 n. 15 (citation omitted). Other federal courts have consistently followed the proposition set forth in *Smallwood* that the burden is on the defendant to show that the plaintiff is an inadequate representative under rule 23.1 of the Federal Rules of Civil Procedure, and, therefore, does not have standing. *See Lewis v. Curtis,* 671 F.2d 779, 788 (3d Cir.1982) ("The burden is on the defendant to demonstrate that the representation will be inadequate." (citing *Smallwood,* 489 F.2d at 592 n. 15)); *Abeloff v. Barth,* 119 F.R.D. 332, 335 (D.Mass.1988) (noting that the requirement of a verified complaint under rule 23.1 of the Federal Rules of Civil Procedure does not require plaintiffs to "allege or demonstrate" that they are adequate representatives; rather, the burden is on

defendants to prove that plaintiffs are inadequate representatives); *Guenther v. Pacific Telecom, Inc.,* 123 F.R.D. 341, 344 (D.Or. 1987) ("The burden is on the defendants to show that [plaintiff] is an inadequate representative." (citing *Smallwood,* 489 F.2d at 592 n. 15)).

¶ 19 We believe that where, as here, the plaintiffs have filed a verified complaint containing the proper allegations as required by rule 23.1 of the Utah Rules of Civil Procedure, the analysis under the federal rule is appropriate, and herewith adopt the same.

## II. Substantial Benefit

¶ 20 Highland Estates argues that the trial court erred in concluding that the LeVangers' derivative action conferred a substantial benefit on similarly situated members of Highland Estates. The trial court's conclusion on this issue was the basis for its award of attorney fees and costs to the LeVangers. "The general rule in Utah ... is that attorney fees cannot be recovered by a prevailing party unless a statute or contract authorizes such an award." *Stewart v. Utah Pub. Serv. Comm'n,* 885 P.2d 759, 782 (Utah 1994). "However, in the absence of a statutory or contractual authorization, a court has inherent equitable power to award reasonable attorney fees when it deems it appropriate in the interest of justice and equity." *Id.* One of the recognized situations in which a court may award attorney fees under this equitable power is "when a plaintiff's litigation confers a substantial benefit on the members of an ascertainable class." *Id.* at 782–83 n. 18 (quotations and citations omitted). "[T]he substantial benefit exception ... permits the award of [attorney] fees when the litigant, proceeding in a representative capacity, obtains a decision resulting in the conferral of a substantial benefit of a pecuniary or nonpecuniary nature" upon the members of the ascertainable class or group. *Id.* (quotations and citations omitted).

¶ 21 The substantial benefit doctrine is well recognized in Utah and we are persuaded that it is appropriate in the context of a derivative action under rule 23.1 of the Utah Rules of Civil Procedure. We look again to federal court decisions interpreting the sub-

stantial benefit doctrine in the context of derivative actions brought under rule 23.1 of the Federal Rules of Civil Procedure. *See Tucker v. State Farm Mut. Auto. Ins. Co.,* 2002 UT 54,¶ 7 n. 2, 53 P.3d 947 ("Interpretations of the Federal Rules of Civil Procedure are persuasive where the Utah Rules of Civil Procedure are 'substantially similar' to the federal rules." (citations omitted)); *Barton v. Utah Transit Auth.,* 872 P.2d 1036, 1039 n. 5 (Utah 1994) ("This court recognizes the persuasiveness of federal interpretations when the state and federal rules are similar and few Utah cases deal with the rule in question.").

¶ 22 Federal courts have applied the substantial benefit doctrine as a way of awarding attorney fees and costs to plaintiffs in derivative suits brought under · rule 23.1 of the Federal Rules of Civil Procedure. *See Zucker v. Westinghouse Elec. Corp.,* 265 F.3d 171, 175–76 (3d Cir.2001); *Kaplan v. Rand,* 192 F.3d 60, 69 (2d Cir.1999).

¶ 23 Federal courts have also recognized that an award of attorney fees and costs to a derivative plaintiff is justified "where the derivative action results in a substantial non-monetary benefit to a corporation." *Kaplan,* 192 F.3d at 69; *see Zucker,* 265 F.3d at 176 (quoting same language from *Kaplan,* 192 F.3d at 69). In a context similar to a derivative action, federal courts have held that the promotion and vindication of shareholders' voting rights is a substantial benefit to the corporation. *See Mills v. Electric Auto–Lite Co.,* 396 U.S. 375, 396–97, 90 S.Ct. 616, 627–28, 24 L.Ed.2d 593 (1970) (holding, in suit brought by shareholders against corporation under federal securities laws, that plaintiffs conferred substantial benefit upon corporation by vindicating statutory policy stressing "the importance of fair and informed corporate suffrage"); *Amalgamated Clothing & Textile Workers Union v. Wal–Mart Stores,* 54 F.3d 69, 71–72 (holding, in suit brought by shareholders against corporation under federal securities laws, "that the promotion of corporate suffrage regarding a significant policy issue confers a substantial benefit regardless of the percentage of votes cast for or against the proposal at issue"). However, a

substantial benefit must be something more than technical in its consequence and be one that accomplishes a result which corrects or prevents an abuse which would be prejudicial to the rights and interests of the corporation or affect the enjoyment or protection of an essential right to the stockholder's interest.

*Mills,* 396 U.S. at 396, 90 S.Ct. at 627 (quotations and citation omitted).

¶ 24 We agree with the holdings of these cases and conclude that a non-monetary benefit, including the promotion and vindication of shareholders' voting rights, can be a substantial benefit in the context of a derivative action brought under rule 23.1 of the Utah Rules of Civil Procedure. We also agree with the trial court's observation that it would have been inappropriate to attempt to offset the non-monetary benefit conferred upon Highland Estates against the LeVangers' attorney fees. As noted by the trial court, if courts were to engage in this process, it would discourage derivative plaintiffs from bringing actions to confer a substantial, non-monetary benefit upon a corporation or association because of the possibility that they would be required to bear the burden of all or part of the attorney fees incurred in bringing the action.

¶ 25 In this case, the court determined that the non-monetary benefit conferred upon Highland Estates by the LeVangers' derivative action was a substantial benefit, thereby justifying its award of attorney fees and costs to the LeVangers. Because non-monetary benefits may satisfy the benefit requirement under the substantial benefit doctrine, *see Zucker,* 265 F.3d at 176; *Kaplan,* 192 F.3d at 69; *Stewart v. Utah Pub. Serv. Comm'n,* 885 P.2d 759, 782 (Utah 1994), the only remaining issue for us to consider is whether the benefit conferred was substantial. In *LeVanger I,* this court concluded that Highland Estates and its Board of Trustees were required to use the proper voting procedures to amend its CC & Rs, and that requiring them to do so "protect[ed] the interests of the members of [Highland Estates]." *Levanger v. Vincent,* 2000 UT App 103,¶ 23, 3 P.3d 187. This result of the LeVangers' derivative action

conferred a benefit upon Highland Estates and its members that is "more than technical in its consequence and ... that accomplishes a result which corrects or prevents an abuse which would be prejudicial to the rights and interests of the corporation or affect the enjoyment or protection of an essential right to the stockholder's interest." *Mills*, 396 U.S. at 396, 90 S.Ct. at 627 (quotations and citation omitted). This benefit conferred upon Highland Estates by the LeVangers' derivative action is also consistent with the federal cases holding, in a similar context, that the promotion and vindication of shareholders' voting rights is a substantial benefit to the corporation. *See id.*, 396 U.S. at 396–97, 90 S.Ct. at 627–28; *Amalgamated Clothing*, 54 F.3d at 71–72. Therefore, we conclude that the trial court properly determined that the LeVangers' derivative action conferred a substantial benefit upon Highland Estates.

## CONCLUSION

¶ 26 We reverse the trial court's determination that the LeVangers had standing as derivative plaintiffs under rule 23.1 of the Utah Rules of Civil Procedure and remand for further proceedings on that issue, consistent with this opinion. If the LeVangers have standing under rule 23.1, the trial court's determination that the LeVangers' derivative action conferred a substantial benefit upon Highland Estates is sustainable.

¶ 27 I CONCUR: RUSSELL W. BENCH, Judge.

JACKSON, Judge (dissenting):

¶ 28 I write separately a different analysis and disposition than my colleagues.

## BACKGROUND

¶ 29 Jean and Rebecca LeVanger are homeowners. They were twenty-year members of the Highland Estates Property Owners Association (the Association), a Utah nonprofit corporation, when they filed this suit. In 1993 and 1994 the Highland Estates Board of Trustees (the Board) concluded that in order to improve the Association's productivity and efficiency, the Association's origi-

nally recorded restrictive covenants (hereinafter CC & Rs) should be amended. Soon after, an amended version of the CC & Rs was drafted and put to a homeowners vote at the Association's annual homeowner meeting held in June of 1994. The LeVangers were not present at that meeting. All of the Association members who did attend, more than forty in number, unanimously voted to adopt the amended CC & Rs. However, because there were not enough members present to constitute a quorum, the Board, as well as the members in attendance, concluded that the most effective way to maximize member participation in the vote was by mail-in ballots.

¶ 30 Letters were sent to all of the Association's members notifying them that the amended CC & Rs had been approved by the Board of Trustees and had received unanimous ratification by the members who attended the June 1994 homeowners' meeting. A copy of the amended CC & Rs was included with the letter of notification as well as an instruction that the mail-in ballots be returned no later than November 30, 1994. The Board hand-delivered to the LeVangers their mail-in ballot and a copy of the proposed CC & Rs. The LeVangers did not express any objection to the amended CC & Rs, either by voicing disapproval at any of the Association's meetings, or by simply mailing in their ballot indicating their opposition.

¶ 31 On September 28, 1995, Highland Estates held its annual homeowner meeting where they announced that the amended CC & Rs had been approved by a super-majority of members. Again, the LeVangers did not attend in person or by representation. No explanation was presented as to why the LeVangers failed to attend both the 1994 and 1995 homeowner meetings where the amended CC & Rs were first presented, and then later adopted. However, the record does show that the LeVangers were not in good standing with the Association. They owed the Association past due annual assessment fees that had begun accruing in 1991, the year they first refused to pay them. Consequently, the Association filed a lawful lien against the LeVangers' property in an at-

tempt to collect the monies due and owing. The LeVangers took no action whatsoever regarding the amended CC & Rs until after they had been ratified and officially recorded.

¶ 32 On January 21, 1997, the LeVangers filed a derivative action against Highland Estates and members of its Board of Trustees pursuant to rule 23.1 of the Utah Rules of Civil Procedure. They alleged in their complaint that the Board had breached its fiduciary duty to Highland Estates and its members by using improper voting procedures to amend and adopt the new CC & Rs. The LeVangers sued for damages, attorney fees, and rescission of the amended CC & Rs.

## ISSUE AND STANDARD OF REVIEW

¶ 33 Highland Estates seeks review of rulings on standing by two different trial court judges. The first ruling followed a hearing on Highland Estates's motion for summary judgment. The trial judge ruled that "based upon the record before the court, there are insufficient facts and insufficient grounds to, as a matter of law, determine that Plaintiffs are inappropriate parties to bring this action." Later, before another trial judge, Highland Estates presented additional evidence regarding standing. The LeVangers did not submit any evidence. Rather, they elected to rely on their theory that Highland Estates had waived the issue of standing. Highland Estates renewed its motion and the trial judge ruled that the LeVangers' standing under Utah Rule of Civil Procedure 23.1 was effectively, if not expressly, decided by the earlier ruling.

¶ 34 In short, the first judge found there was no genuine issue as to any material fact regarding standing and granted standing to the LeVangers as a matter of law. The second judge heard Highland Estates's additional evidence and then adopted the first judge's decision. Thus, we can review their in tandem legal conclusions regarding standing for correctness on the undisputed material facts in the record. *See Winegar v. Froerer Corp.*, 813 P.2d 104, 107 (Utah 1991) ("In reviewing the trial court's ruling, we accept the facts and inferences in the light most favorable to the losing party. Because summary judgment is granted as a matter of law, we may reconsider the trial court's legal conclusions."); *Barber v. Farmers Ins. Exch.*, 751 P.2d 248, 251 (Utah Ct.App.1988) ("Since a summary judgment is granted as a matter of law rather than fact, this court is of course free to reappraise the trial court's legal conclusions.").

[T]he question of whether a given individual or association has standing to request a particular relief is *primarily a question of law*, although there may be factual findings that bear on the issue. We will review such factual determinations made by a trial court with deference. Because of the important policy considerations involved in granting or denying standing, *we will closely review trial court determinations of whether a given set of facts fits the legal requirements for standing*, granting minimal discretion to the trial court.

*Kearns–Tribune Corp. v. Wilkinson*, 946 P.2d 372, 373–74 (Utah 1997) (citing *State v. Pena*, 869 P.2d 932, 935–36, 938–39 (Utah 1994)) (emphasis added).

¶ 35 Accordingly, the issue before us is Highland Estates's challenge to the trial court's legal conclusions that the undisputed facts of this case "fit[ ] the legal requirements [of Utah Rule of Civil Procedure 23.1] for standing," and that the LeVangers were thus proper derivative plaintiffs. *Id.*

## ANALYSIS

¶ 36 The plain language of Utah Rule of Civil Procedure 23.1 states that a "derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association." Utah R. Civ. P. 23.1. My colleagues have reversed the trial court's determination that the LeVangers had standing as derivative plaintiffs, and remanded the case for further proceedings on this issue.[6] I cannot concur because, when the

---

**6.** The majority remands the case to the trial court to determine whether the defendant has

satisfied its burden of proof by demonstrating that the Levangers' representation will be inade-

legal standards for standing contained in rule 23.1 are applied to the undisputed evidence, the LeVangers do not qualify to represent the interests of the Association or its members. Thus, the LeVangers are precluded from pursuing a derivative action against Highland Estates.

¶ 37 I emphasize that the scope of the issue to be decided herein does not extend to whether the LeVangers are entitled to bring a direct action against Highland Estates or members of its Board of Directors. Nor does it extend to whether a substantial benefit was conferred upon the Association. The sole issue to be decided is whether the LeVangers fairly and adequately represent other similarly situated members of the Association and are thus qualified to be derivative plaintiffs pursuant to the legal requirements of rule 23.1.[7]

A. Fiduciary Nature of Derivative Actions

¶ 38 The United States Supreme Court has held that in a derivative action the plaintiff acts as a fiduciary for the remaining shareholders. *See Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 549, 69 S.Ct. 1221, 1227, 93 L.Ed. 1528 (1949). In bringing a derivative action, the plaintiff sues not only for himself, but on behalf of the best interests of the owner of the cause of action—the corporation. *See Pacemaker Plastics Co., Inc. v. AFM Corp.,* 139 F.Supp.2d 851, 855 (N.D.Ohio 2001). Courts have recognized that the derivative plaintiff is often a self-chosen representative who takes into his own hands the responsibility of redressing the wrongs done against the corporation or association. *See Cohen,* 337 U.S. at 549–50, 69 S.Ct. at 1227. Since a derivative action is brought by such a self-appointed plaintiff, the Supreme Court has held that a state may impose certain "standards of responsibility, liability and accountability which it considers will protect the interests" the proposed de-

rivative plaintiff seeks to represent. *Id.* Thus, safeguards have been established to ensure that the action brought against the corporation is truly within the best interests of the class the plaintiff claims to represent. *See Pacemaker Plastics Co., Inc.,* 139 F.Supp.2d at 855.

¶ 39 Under the Utah Rules of Civil Procedure, those safeguards are found in rule 23.1, wherein derivative actions are limited to only those shareholders who "fairly and adequately represent the interests of the shareholders or members similarly situated." Utah R. Civ. P. 23.1. As courts have recognized the fiduciary nature of a derivative action, they have rejected prospective derivative plaintiffs with interests that are not in accord with their fellow shareholders or association members. *See generally Davis v. Comed, Inc.,* 619 F.2d 588, 593–94 (6th Cir.1980). Stockholders and association members may possess freedom in choosing the directors of their board, but they enjoy no such liberties as to the derivative plaintiff who steps forward to represent them. *See Cohen,* 337 U.S. at 549, 69 S.Ct. at 1227. Principles of equity, therefore, dictate that if a self-appointed "champion" purports to initiate litigation on behalf of the association to which he belongs, such a plaintiff must fairly and adequately represent the interests of the members of the corporation or association.

¶ 40 The LeVangers do not satisfy this statutory safeguard. Based on the uncontested evidence submitted by the defendant, Highland Estates, I conclude that the LeVangers do not fairly and adequately represent the interests of similarly situated members of the Highland Estates Homeowners Association. As the court in *Pacemaker Plastics Co., Inc.* pointed out, because a derivative plaintiff acts as a fiduciary for other members, courts must "carefully enforce" this limitation. *Pacemaker Plastics Co., Inc.,* 139 F.Supp.2d at 855. Here the trial

---

quate. *See Lewis v. Curtis,* 671 F.2d 779, 788 (3d Cir.1982); *Smallwood v. Pearl Brewing Co.,* 489 F.2d 579, 592 (5th Cir.1974); *Abeloff v. Barth,* 119 F.R.D. 332, 335 (D.Mass.1988); *Guenther v. Pacific Telecom, Inc.,* 123 F.R.D. 341, 344 (D.Or. 1987). I agree with the principle that the burden falls on the defendant to prove the inadequacy of the plaintiff in maintaining a derivative action,

and conclude that Highland Estates satisfied this burden.

7. The standing requirements in a derivative action under Utah Rule of Civil Procedure 23.1 are different than those in our conventional standing analysis. *See Kearns–Tribune Corp. v. Wilkinson,* 946 P.2d 372, 375 (Utah 1997).

court failed to "carefully enforce" this important limitation, and committed reversible error in doing so. *Id.*

## B. Factors to be Applied in Determining Fair and Adequate Representation in This Case

¶ 41 The question of whether a derivative plaintiff fairly and adequately represents the interests of similarly situated members requires application of the legal requirements of rule 23.1 to the particular facts of a case. Courts have identified a number of factors whose existence will disqualify certain parties as derivative plaintiffs.[8] However, courts should focus on only those factors which are materially relevant in the particular setting of the dispute. Here, Highland Estates presented two reasons or factors that they argued would disqualify the LeVangers as fair and adequate representatives under the standards of rule 23.1. First, they argued that the LeVangers were in an antagonistic or vindictive position vis-a-vis Highland Estates. Second, they argued that the LeVangers were without any support by those they were attempting to represent. *See Norris v. Weir,* 35 Ohio App.3d 110, 114–15, 520 N.E.2d 10, (1987) (holding that the fair and adequate representation requirement was not satisfied because of litigation between plaintiff and defendant, the antagonism between the parties, and the lack of support plaintiff garnered in its claim), *overruled on other grounds by Perry v. Eagle–Picher Indus., Inc.,* 52 Ohio St.3d 168, 556 N.E.2d 484, 489 (1990); *see also Blum v. Morgan Guar. Trust Co. of N.Y.,* 539 F.2d 1388, 1390 (5th Cir.1976) (taking into account outside entanglements that rendered it likely that derivative plaintiff would disregard interests of other class members); *Newell Co. v. Vermont Am. Corp.,* 725 F.Supp. 351, 368–69 (N.D.Ill. 1989) (holding that the most important consideration should be the existence of an antagonistic economic interest). Application of

these factors leads to the conclusion that the LeVangers are not qualified as derivative plaintiffs.

### 1. Economic Antagonism Between the LeVangers and the Other Members of the Association

¶ 42 Courts have recognized that economic antagonism between the derivative plaintiff and the other association members is typically fatal to a shareholder derivative suit. *See Pacemaker Plastics Co., Inc. v. AFM Corp.,* 139 F.Supp.2d 851, 855 (N.D.Ohio 2001). In *Owen v. Modern Diversified Industries, Inc.,* 643 F.2d 441 (6th Cir.1981), the court held that the derivative plaintiff failed to fairly and adequately represent the interests of the other shareholders when, inter alia, he maintained a de minimis equity investment as well as a substantial debt investment acquired in the defendant corporation. *See id.* at 443–44.

¶ 43 While the LeVangers have not incurred a substantial debt investment in Highland Estates, the undisputed evidence manifests an inherent economic antagonism between the LeVangers and the other members of the Association. Highland Estates presented evidence that beginning in 1991 the LeVangers had not only failed, but in fact refused, to pay the Association's annual assessment fees. At the time the LeVangers filed this lawsuit, their long-standing assessment fees were still unpaid. The LeVangers' staunch refusal to pay the annual assessments placed them in direct economic antagonism with the class of Association members they purported to represent: members who, unlike the LeVangers, had dutifully and faithfully paid their annual assessments.

¶ 44 Moreover, Highland Estates presented evidence that, because of the LeVangers' refusal to pay their assessment fees, a lien had been placed on their property. The Board placed the lien on the property in an

---

8. Factors that courts have identified as material include: (1) the economic antagonisms between the representative and the class of shareholders represented; (2) the remedy sought by the derivative plaintiff; (3) indications that the plaintiff is not the driving force behind the litigation; (4) the plaintiff's unfamiliarity with the litigation; (5) other litigation pending between the plaintiff and the defendant; (6) the relative magnitude of the plaintiff's personal interests as compared to his interest in the derivative action itself; (7) the plaintiff's vindictiveness toward the defendant; and (8) the degree of support the plaintiff is receiving from the shareholders he purports to represent. *See Davis v. Comed, Inc.,* 619 F.2d 588, 593–94 (6th Cir.1980).

attempt to expedite payment of years of unpaid assessment fees.

¶ 45 In bringing their derivative action, the LeVangers not only hold themselves out as representatives of members who pay their assessment fees, but also claim to represent members whose property was free of any sort of Association imposed encumbrance. The LeVangers do not fall into either of those two groups.

¶ 46 Further, the LeVangers' derivative action acts as a tool of leverage that aids their personal interests. In *Roberts v. Alabama Power Co.*, 404 So.2d 629 (Ala.1981), the derivative plaintiff's complaint was disqualified for lack of fair and adequate representation. *See id.* at 636. The court concluded its opinion stating that part of the derivative plaintiff's purpose in bringing the derivative action was to obtain leverage against the defendant corporation in a matter of personal litigation the plaintiff was pursuing. *See id.* at 636–37.

¶ 47 While Highland Estates has not filed a complaint against the LeVangers, the lien placed on their property is an action with legal significance, one typically preparatory to suit. Thus, the LeVangers' initiation of this suit, while in their adverse legal posture with Highland Estates, creates an inherent conflict between the LeVangers' personal interests and those of other Association members.

¶ 48 Although the LeVangers had many opportunities to register an objection or complaint, they did neither. They did not attend the 1994 annual meeting where the amendments to the CC & Rs were on agenda for action. They did not voice their disapproval of the amended CC & Rs when their mail-in ballot was presented to them. And they did not attend the 1995 annual meeting where the Board announced the adoption of the CC & Rs based on the results of the mail-in balloting. In contrast, members of the Association voiced their approval of the amended CC & Rs by submitting their ballots at the annual meeting, as well as by mail. Then, sixteen months expired before the LeVangers filed their derivative action. During the same time period, no member of the Association stepped forward to voice any disapproval of the Association's actions, or to pursue a derivative action on their own.

¶ 49 Finally, the timing of the LeVangers' derivative action coincided with the filing of the lien on their property. These undisputed facts demonstrate an inherent economic antagonism between the LeVangers and the other members of the Association.

2. Degree of Support the LeVangers Received from Members of the Association

¶ 50 The lack of demonstrated support from other members of the Association is also a material factor in this case. *See Norris v. Weir*, 35 Ohio App.3d 110, 115–16, 520 N.E.2d 10 (1987). Here, the undisputed facts support the conclusion that the LeVangers did not receive any member support in their determination to pursue their litigation.

¶ 51 In *Norris*, the court pointed out that the derivative plaintiff had failed to garner the support of any fellow shareholders and, combining that factor with others the court found relevant, dismissed the plaintiff's derivative action for failure to meet the fair and adequate representation standard. *See id.* at 115, 520 N.E.2d 10.

¶ 52 Highland Estates presented undisputed evidence that the LeVangers garnered no demonstrated support for their derivative action from the other members of the Association. The LeVangers proffered nothing more than affidavits from other members of the Association; however, while these affidavits showed a few other members may have sympathized with the LeVangers' plight, nevertheless the affidavits did not evince member support for the derivative action. Highland Estates submitted the undisputed testimony of its former president, Lance Swedish. He testified that the LeVangers' suit had very little, if any, support among the members of the Association. He testified that the LeVangers' derivative action had substantially and adversely impacted the interests of the individual members of the Association, and that even after the commencement of the LeVangers' derivative action, the LeVangers had threatened the Board of

Trustees and members of the Association with additional legal action.

¶ 53 At the Association's 1994 annual meeting, the approximately forty homeowners present voted unanimously to adopt the new CC & Rs. However, in an effort to maximize the voting participation of its members, the Board distributed copies of the amended CC & Rs with a mail-in ballot for each homeowner. The results of the Association's mail-in balloting showed that nearly two-thirds of the Association's members favored the amended CC & Rs. While some members may have been opposed to the procedures the Board took in conducting the mail-in vote, and even though twenty-six members did not approve the amended CC & Rs, not a single member demonstrated any support for the LeVangers' derivative suit. These undisputed facts demonstrate that the LeVangers did not have any member support for their suit. Due to the existence of economic antagonism and the non-existence of support, I conclude that the LeVangers do not fairly and adequately represent the interests of the other members of the Association.

## CONCLUSION

¶ 54 Utah Rule of Civil Procedure 23.1 requires derivative plaintiffs to fairly and adequately represent the interests of those shareholders or association members similarly situated, in order to maintain such an action. Courts have explicitly stated that the fair and adequate representation standard should be carefully enforced. I conclude, based on undisputed material facts in the record, that as a matter of law, the LeVangers do not satisfy this appropriately stringent legal standard, and should not have been allowed to maintain their derivative action.

¶ 55 Accordingly, this appeal should be dismissed because the derivative plaintiffs do not have standing. Moreover, this court's decision in *LeVanger I* should be vacated because the LeVangers were not entitled to that decision in the first place.