

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-10-2001

# Zucker v. Westinghouse Elec

Precedential or Non-Precedential:

Docket 00-3783

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Zucker v. Westinghouse Elec" (2001). *2001 Decisions*. Paper 207.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/207

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 10, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-3783

ALBERT ZUCKER; STANLEY HERSHFANG;
JACOB JOSEPH MILLER

v.

WESTINGHOUSE ELECTRIC CORPORATION;
J. C. MAROUS; P. E. LEGO

(D.C. Civil No. 91-cv-354)

DANIEL MOGELL, in his capacity as shareholder,
suing derivatively, and individually

v.

BARBARA H. FRANKLIN; RICHARD M. MORROW; HAYS
T. WATKINS; DONALD F. HORNING; JOHN B. CARTER;
JOHN C. MAROUS; ROBERT W. CAMPBELL; RENE C.
MCPHERSON; FRANK CARLUCCI; RICHARD R.
PIVIROTTO; PAUL E. LEGO; WILLIAM A. POWE; GARY M.
CLARK; WILLIAM H. GRAY; PAULA STERN; DAVID T.
MCLAUGHLIN; LEO W. YOCHUM; MICHAEL H. JORDAN;
ROBERT E. CAWTHORN; GEORGE H. CONRADES; DAVID
K.P. LI; ROBERT D. WALTER; CBS CORPORATION f/k/a
Westinghouse Electric Corporation

(D.C. No. 99-cv-596)

WILLIAM C. RAND, Stockholder Objector, owner of
100 shares of CBS Corporation common stock,

        Appellant

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ. Nos. 91-00354 and 99-00596)
District Judge: Honorable D. Brooks Smith

Argued August 2, 2001

BEFORE: MCKEE, AMBRO, and GREENBERG,
Circuit Judges

(Filed: September 10, 2001)

        Richard D. Greenfield
        Greenfield & Goodman
        222 West Lancaster Avenue
        P.O. Box 1785
        Paoli, PA 19301

        Mark C. Rifkin (argued)
        Rifkin & Associates
        222 West Lancaster Avenue
        Suite 201
        Paoli, PA 19301

         Attorneys for Appellee
        Daniel Mogell

        Leonard Fornella
        Heintzman, Warren, Wise &
         Fornella, P.C.
        The 35th Floor, Gulf Tower
        707 Grant Street
        Pittsburgh, PA 15219-1913

         Attorneys for Defendant-Appellees
        Westinghouse Electric Corporation
        and CBS Corporation

Dennis J. Block
Caldwalader, Wickersham & Taft
100 Maiden Lane
New York, NY 10038

Stephen A. Radin
Weil, Gotshall & Manges LLP
767 Fifth Avenue
New York, NY 10153

Joseph A. Katarincic
Thorp Reed & Armstrong, LLP
One Oxford Center
301 Grand Street
Pittsburgh, PA 15219

 Attorneys for Defendants-Appellees
Robert W. Campbell, Frank C.
Carlucci, Robert E. Cawthorn, Gary
M. Clark, George H. Conrades,
William H. Gray, III, Barbara H.
Franklin, Donald F. Hornig, Michael
H. Jordan, Paul E. Lego, David
K.P. Li, John C. Marous, David T.
McLaughlin, Rene C. McPherson,
Richard M. Morrow, Richard P.
Pivirotto, William A. Powe, Paul
Stern, Robert D. Walter, Hays T.
Watkins and Leo Yochum

William C. Rand (argued)
1150 Fifth Avenue
New York, NY 10128

 Appellant pro se

OPINION OF THE COURT

GREENBERG, Circuit Judge.

I. INTRODUCTION

This matter comes on before this court on an appeal by William C. Rand, a shareholder in CBS Corporation, the successor to Westinghouse Electric Corporation, from an order entered on October 19, 2000, awarding plaintiff Daniel Mogell attorney's fees of $582,443.44 out of the $750,000 requested in this derivative litigation upon its settlement. Rand objected in the district court to the award of any fee and, in the alternative, objected to the quantum of the fee requested.1 Rand repeats those two objections on this appeal. Inasmuch as we hold that the district court erred in awarding any fee, we do not consider whether the fee as awarded was excessive.

We only need summarize the convoluted procedural history of this case. The appeal arises from the settlement of derivative litigation against Westinghouse Electric Corporation and its successor in interest, CBS Corporation, as well as certain of the corporations' directors and officers. As a matter of convenience, we will refer to the corporate defendants simply as CBS even though much of the alleged wrongdoing charged in the litigation took place before CBS succeeded to Westinghouse's interests. The derivative litigation was related to a shareholders' class action commenced in 1991 following CBS's announcement that it would incur multi-million dollar losses on account of certain loans it had made. The class action was based on alleged statutory securities and common law violations, while the derivative litigation was based on allegations that CBS's officers and directors grossly mismanaged CBS and had been reckless with respect to its affairs. There is no doubt that the prosecution and defense of both the class action and derivative litigation were time consuming and costly.

_____

1. There were other objectors as well.

4

In 1998, after extensive pretrial proceedings, the class action parties reached a tentative settlement subject to court approval providing for a cash payment of $67,500,000 to the class action plaintiffs to be paid in large part by insurance companies pursuant to liability policies covering CBS's officers and directors. The settlement, however, required the termination of the derivative litigation because some of the insurance policies covered claims asserted in both the class action and derivative litigation and the companies were unwilling to pay the amount needed to settle the class action without receiving a release of their obligations in both sets of litigation. But the defendants in the derivative litigation were unwilling to provide those releases unless they, in turn, received a release of all claims asserted against them in that litigation.

Ultimately, in 1999 the derivative litigation, like the class action litigation, was settled subject to court approval. See Fed. R. Civ. P. 23.1. Mogell emphasized the relationship between the class action and derivative litigation to the district court in his application for approval of the derivative litigation settlement and allowance of fees as follows:

> Accordingly, without the release of the defendants in the Derivative Litigation, CBS cannot obtain the substantial funds needed to `bridge the gap' to settle the Class Action Litigation. Thus, by obtaining these releases, which were a material component of the conditions set down by the Carriers, CBS was relieved of having to pay many millions more of the settlement of the Class Action. Even more significantly, such settlement, if approved by this Court, will relieve it of many hundreds of millions of dollars of potential liability exposure from the underlying claims asserted in the Class Action.

App. at 111-12. Mogell then went on to explain the need for the settlement of the derivative action as follows:

> CBS also will not release the insurers who wrote those director and officer insurance policies without a simultaneous settlement of the Derivative Litigation because CBS is financially obligated under bylaws

5

adopted in accordance with Pennsylvania law to indemnify the defendants in the Class Action and in the Derivative Litigation for any liabilities and for all defense costs that are not covered by insurance. Thus, even if the defendants in the Derivative Litigation would agree to release their insurers without a settlement of the Derivative Litigation, CBS would not agree to incur liabilities and defense costs in both the Class Action and the Derivative Litigation that otherwise would be covered by insurance. The release of the defendants in the Derivative Litigation is, therefore, an integral element of the settlement of the Class Action, which can now be concluded with approval by the Court.

Id. at 112.

Mogell then summed up what he thought was the benefit to CBS of a settlement of the derivative litigation as follows:

Settlement of the Class Action, which could not be consummated without global releases from the Carriers, directly benefits CBS because, as indicated above, CBS is a defendant in that litigation, yet will not be the principal source of funds for the litigation settlement. Thus, settlement of the Derivative Litigation permits CBS to be provided with many millions in funds from the Carriers to conclude the Class Action, which otherwise poses a substantial risk of liability in the hundreds of millions of dollars to CBS if it were not settled. In addition, settlement of the Derivative Litigation relieves CBS of any obligation to indemnify the defendants, a savings that cannot be readily quantified, but which could well exceed many millions of dollars.

Id. at 112-13.

The "Derivative Action Stipulation of Settlement" dated May 11, 1999, included a provision by which CBS was to receive certain benefits which included "$250,000 that otherwise would have been paid to settle the Class Action Litigation," to be paid by the insurance companies that had issued the officers' and directors' policies. Id. at 88. The stipulation also stated that CBS was to receive the benefit

6

that both the class action and derivative litigation would be ended. Mogell, however, did not assert in his application for approval of the settlement how the derivative litigation had benefitted CBS, focusing instead on the benefits of its termination.

The stipulation in the derivative action provided that if the court approved the settlement, Mogell's attorney could submit an application for attorney's fees and reimbursement of expenses in the amount of $750,000 divided between $631,000 in attorney's fees and $119,000 for reimbursement of expenses. CBS took no position with respect to the allowance of the fees but agreed to pay any award up to $750,000. The granting of the fee application, however, was "not a condition of the Settlement," id. at 95, and was to be considered by the court separately from the court's consideration of whether the settlement "is fair, reasonable, adequate and in the best interests of CBS and the holders of shares of CBS common stock." Id. Of course, if the court denied the fee application, the settlement nevertheless was to stand. As could be expected, Mogell applied for the fees as the settlement contemplated.

The district court approved the settlement of both the class action and derivative litigation on October 18, 1999. At that time, however, the court did not rule on Mogell's fee application. Instead, one year later on October 18, 2000, it issued a memorandum order entered on October 19, 2000, on the point. The memorandum recited that "[i]n this case, CBS Corporation, Westinghouse's successor, has derived a benefit from the disposition by settlement of the two new derivative claims and the ability to obtain a global settlement of the underlying securities action." Id. at 4. The court, however, did not indicate that CBS received a benefit from the institution of the derivative litigation, as distinguished from its settlement. The court, after determining that a fee should be awarded, addressed the quantum of the award, pointing out that Mogell's attorney submitted a lodestar computation of $1,456,108.60 for the value of the legal services. The court concluded, however, for reasons that we need not explain, that a 60% deduction was appropriate and thus it awarded $582,443.44 in fees. Rand then appealed from the order of October 19, 2000.

7

II. DISCUSSION

The district court had jurisdiction in this action under 28 U.S.C. S 1331 and we have jurisdiction under 28 U.S.C. S 1291. Rand, as an objecting shareholder, has standing to appeal. See Bell Atl. Corp. v. Bolger, 2 F.3d 1304, 1310 (3d Cir. 1993). In general, we review the award of a fee for an abuse of discretion, although there are clear error and plenary aspects in a review including examination of factual findings and legal conclusions. See Watson v. Southeastern Pa. Transp. Auth., 207 F.3d 207, 224 (3d Cir. 2000), cert. denied, 121 S.Ct. 1086 (2001); Holmes v. Millcreek Township Sch. Dist., 205 F.3d 583, 589 (3d Cir. 2000). In this case, as will be seen, we hold that as a matter of law the district court erred in awarding any fee as the derivative litigation did not benefit CBS and thus we are exercising plenary review. We note, however, that if we were reviewing this matter on an abuse of discretion basis our result would be the same.

It is useful at the outset of our discussion of the substantive issues to refer to and dispose of the four issues that Mogell in his brief indicates are raised on this appeal:

> 1. May an objector who does not object to the prop osed settlement of a derivative action later be heard to object to a fee award on the basis that the settlement did not justify an award of attorneys fees and reimbursement of expenses?
>
> 2. Whether the district court's finding that the settlement conferred benefits upon CBS Corporation was clearly erroneous?
>
> 3. May an objector who does not object to the lode star of the derivative plaintiffs' counsel later be heard to object to a fee award based upon the lodestar?
>
> 4. Whether the district court's determination that  the lodestar of the derivative plaintiffs' counsel was reasonable was within its discretion?

Br. at 1. Consideration of these issues does not long detain us.

First, the fact that Rand did not object to the settlement does not mean that he cannot object to the fee application.

8

The settlement of the derivative litigation was not dependent on the disposition of the fee application and the stipulation of settlement did not and probably could not provide that Mogell's attorney would be paid any fees without court approval. The settlement merely provided that Mogell's attorney could apply for fees to which CBS would not object if the application did not seek an award of over $750,000. Accordingly, Rand, by not objecting to the settlement, did not waive the right to object to the fee application.

Second, the district court's finding that the settlement conferred benefits on CBS is immaterial as we assume that that finding was correct and thus we are not concerned with whether it was clearly erroneous. Finally, Rand's alleged failure to object to the lodestar and the court's determination of it are not germane to our disposition of this appeal as Mogell is not entitled to any attorney's fees at all.

What, then, is the question the answer to which controls the outcome of this appeal? The question is quite uncomplicated. What we must determine is whether CBS obtained any benefit from the institution and settlement of the derivative litigation. We derive this formulation of the issue from Mills v. Elec. Auto-Lite Co., 396 U.S. 375, 395, 90 S.Ct. 616, 627 (1970), in which, after recognizing that attorney's fees historically have been awarded from financial recoveries, the Court indicated that "an increasing number of lower courts have acknowledged that a corporation may receive a `substantial benefit' from a derivative suit, justifying an award of counsel fees, regardless of whether the benefit is pecuniary in nature." The viability of the Mills standard is demonstrated by the recent case of Kaplan v. Rand, 192 F.3d 60, 69 (2d Cir. 1999), in which, after noting that an attorney's fee could be awarded from a fund created by litigation, the court continued on and, citing and quoting Mills, indicated that "[i]t is by now also well established that an award of counsel fees is only justified where the derivative action results in a substantial non-monetary benefit to the corporation." See also Crasto v. Estate of Kasel, 63 F.R.D. 25, 27 (S.D.N.Y. 1974) ("Plaintiffs cite no authority, nor

9

have we found any, extending the `substantial benefit' rule to cases in which the benefit conferred was not accomplished by the culmination of successful litigation.").

Frequently when a corporation receives a substantial benefit from the settlement of derivative litigation it will be obvious that the settlement is also a benefit attributable to the institution of the litigation itself and thus a court reviewing the settlement need not focus on the question of whether the litigation benefitted the corporation. Consequently, there seems to be a paucity of precedent dealing with the distinction between institution and settlement of litigation for purposes of defining what is a benefit to the corporation. But see Joy Mfg. Corp. v. Pullman-Peabody Co., 729 F. Supp. 449, 453 (W.D. Pa. 1989) ("[W]here [a] party has by his or her effort and expense through litigation created a benefit for others a fee award is appropriate whether or not the litigation is mooted before judgment and regardless of whether there is a monetary fund created from which fees may be paid.").2 We do find, however, a useful analogy to the situation here, in which, as will be seen the derivative litigation did not benefit CBS, in fee shifting statutes providing for the allowance of fees to a "prevailing party." In those cases, to recover a fee a plaintiff must demonstrate that he obtained "some relief on the merits of his claim,""some of the benefit sought" in the action, or "relief on a significant claim in the litigation." Buckhannon Board & Care Home, Inc. v. W.Va. Dep't of Health & Human Res., 121 S.Ct. 1835, 1840 (2001); Watson, 207 F.3d at 224; Holmes , 205 F.3d at 593. It seems to us that the principle recognized in those cases, though based on statutes, should be applied in the nonstatutory context here. A plaintiff should not receive a fee in derivative litigation unless the corporation, by judgment or settlement, receives some of the benefit sought in the litigation or obtains relief on a significant claim in the litigation. See also Chrysler Corp. v. Dann , 223 A.2d 384, 387 (Del. 1966) ("[T]he rule [allowing attorney's fees]

_____

2. We are not concerned in the context of this case with the possible impact of Buckhannon Board & Care Home, Inc. v. W.Va. Dep't of Health & Human Resources, 121 S.Ct. 1835 (2001), on the proposition for which we cite Joy.

10

requires that not only must the action confer some benefit upon the corporation, but, also, that the action, when filed, was meritorious and had a casual connection to the conferred benefit."); Baron v. Allied Artists Pictures Corp., 395 A.2d 375, 379 (Del. Ch. 1978), aff 'd, 413 A.2d 876 (Del. 1980).

It is, of course, obvious that the derivative litigation did not confer any benefit on CBS and the district court never held that it did. In his brief, though Mogell argues vigorously, and we will assume correctly, that CBS received a benefit from the derivative litigation settlement, he makes no contention that CBS is better off because of the institution and settlement of the derivative litigation than it would have been if the litigation had not been brought in the first place.

In fact, the derivative litigation plainly proved to be a detriment to CBS because it was an impediment to the settlement of the class action. We reiterate that Mogell's brief may be read with the greatest care from cover to cover but the reader will find nothing in it explaining how CBS benefitted from the institution and settlement of the derivative litigation as contrasted with the mere settlement of the litigation. Moreover, when we repeatedly asked Mogell's attorney at oral argument how the derivative litigation benefitted CBS he never could answer the question. Indeed, he did not even make an argument that unless the derivative litigation had been brought the class action could not have been settled in 1998 because of a concern that derivative litigation arising out of the alleged wrongdoing could have been brought later.3  Of course Mogell had the burden in the district court to show that the derivative litigation conferred a benefit on CBS and he simply did not meet this burden. In fact, he never even tried to do so as he merely contended in his application for

_____

3. Obviously it would have been a complete speculation as to whether such litigation would have been brought which, in any event, probably would have been time barred, at least in part. Moreover, for purposes of an award of attorney's fees, a benefit from the litigation cannot be based on fanciful, speculative theories. See Schechtman v. Wolfson, 244 F.2d 537, 540 (2d Cir. 1957).

11

approval of the settlement, as the district court found, that CBS received a benefit because the derivative litigation was settled and the settlement made the class action settlement possible.

We have not overlooked the circumstance that CBS received a cash payment of $250,000 from the derivative litigation settlement and we recognize the obvious, i.e., the receipt of cash can be a benefit. But in this case Mogell does not argue that because of the cash settlement CBS made a net financial gain on account of the institution of the derivative litigation. Plainly, it did not. While there is nothing in the record that permits us to make any findings as to what CBS's attorney's fees were in the derivative litigation, we note that Mogell's attorneys' lodestar computation for their services was $1,456,108.60. In the circumstances, it is not conceivable that CBS's attorney's fees did not exceed $250,000.4 Consequently, CBS certainly did not obtain a direct financial benefit from the derivative litigation. Thus, inasmuch as CBS derived no other benefit from the derivative litigation we must reverse the award of attorney's fees.

We realize that the result we reach may complicate the settlement of complex corporate litigation.5 Nevertheless, sound principles require that we reach it. Mogell alleges that the officers and directors caused CBS enormous losses but in the end he was willing to settle the case for $250,000 being paid to CBS and the opportunity to apply for an attorney's fee of three times that amount. In this case the tail surely wagged the dog. In fact, the derivative litigation when ended was being used for nothing more than, as Rand accurately states in his brief, a"hold up" as

_____

4. At oral argument when we inquired of Mogell's attorney whether we should remand the case to the district court to determine what fees CBS paid in the derivative litigation he said that it was not necessary to do so because the fees must have exceeded $250,000.

5. The opinion may have a salutary affect if it discourages attorneys from bringing insubstantial derivative litigation as they should recognize that they will not in the end be able to terminate the case with a stipulation of dismissal on the basis of their fees being paid unless the corporation somehow benefitted from the litigation.

12

it stood in the way of the class action settlement. Overall, it is clear beyond doubt that the derivative litigation in itself did not yield a benefit to CBS.

We close our discussion by pointing out that we live in a real world and thus anticipate that attorneys may seek to circumvent the effect of this opinion by constructing elaborate frameworks within which fee applications will be included. Accordingly, the district courts must review settlements in derivative litigation in which attorney's fees will be sought with great care to ensure that a fee is not assessed against a corporation following the settlement of derivative litigation unless the corporation has received a substantial benefit from the litigation itself and not simply from its settlement. After all, when derivative litigation is terminated a corporation always can be said to have obtained a benefit as it will save further legal fees. Of course, if the litigation results in a substantial monetary recovery by the corporation it should be readily apparent that it received a substantial benefit from the litigation. But where, as here, the settlement is for what in the context of the case is a nominal amount not even exceeding the corporation's legal expenses in the litigation, the fees cannot be justified on the basis of the monetary recovery.6

III. CONCLUSION

For the foregoing reasons, the order entered October 19, 2000, will be reversed and the matter will be remanded to the district court for the purpose of entering an order denying Mogell's application for fees.

_____

6. We do not suggest that the mere fact that a recovery exceeds the corporation's direct legal fees means that the corporation benefitted from the litigation, for the corporation may have had other expenses attributable to the litigation and its participation in the litigation may have diverted its officers and employees from other corporate functions. Of course, even if it can be said that the corporation benefitted from the litigation, a court in the exercise of its discretion might deny fees on a theory that the benefit was contrived to support a fee application. A question of whether the benefit is contrived is particularly likely to arise when the plaintiff asserts that the corporation received a substantial nonmonetary benefit in a settled case.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit