

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-30-2004

# Zucker v. Westinghouse Elec

Precedential or Non-Precedential: Precedential

Docket No. 02-3389

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Zucker v. Westinghouse Elec" (2004). *2004 Decisions.* Paper 529.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/529

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT
_____

No. 02-3389
_____

ALBERT ZUCKER; STANLEY
HERSHFANG; JACOB JOSEPH
MILLER; TOBY FEUER; SPRING
CREEK CARDIO-MEDICAL
ASSOCIATES, INC. PROFIT
SHARING PLAN AND TRUST, on
behalf of itself and all others similarly
situated; GLORIA BERTINATO, on
behalf of herself and all others similarly
situated; JOSEPH H. LEVIT; GEORGE
M.D. RICHARDS; MICHAEL
CHRISTNER; JIM L. THOMPSON,
Trustee for Thompson Chemical Profit
Sharing Plan; LOUISE M. JACOB, for
Herself, as Trustee for Arnold M. Jacob
Ten Year Trust and as Trustee of P.J.
VanArtsdalen Ten Trust of P.J.
VanArtsdalen Ten Trust; PATRICIA J.
VANARTSDALEN, as Custodian for
Jennifer VanArtsdalen Custodial
Account; ARNOLD M. JACOB, and
Patricia J. VanArtsdalen, as Trustees for
the Jennifer VanArtsdalen Irrevocable
Trust, David J. VanArtsdalen Irrevocable
Trust, Adam T. Jacob Irrevocable Trust
and Noah B. Jacob Irrevocable Trust;
MICHAEL E. NOGAY; MARGARET
ALESSI; NATHAN KLEINHANDLER;
MICHAEL SLAVIN; RONALD
GOLDSTEIN; RICHARD
SCHWARZSCHILD; THOMAS
MITCHEL; JOSEPH RASCHAK;
DONALD H. MCLENNAN; RUTH

STEPAK; GERRY KRIM

v.

WESTINGHOUSE ELEC.; J. C.
MAROUS; P. E. LEGO;
WESTINGHOUSE FIN. SER.;
WESTINGHOUSE CREDIT; WILLIAM
A. POWE; THEODORE STERN;
WARREN H. HOLLINSHEAD;
ROBERT E. FAUST; ROBERT F.
PUGLIESE; SHEARSON LEHMAN
BROS.; GOLDMAN SACHS & CO.;
LAZARD FRERES & CO.; LEHMAN
BROS INTL; LAZARD BROS. CO.
LTD.; PRICE WATERHOUSE;

(D.C. No. 91-cv-00354)

DANIEL MOGELL, in his capacity as a
shareholder, suing derivatively, and
individually

v.

BARBARA H. FRANKLIN; RICHARD
M. MORROW; HAYS T. WATKINS;
DONALD F. HORNIG; JOHN B.
CARTER; JOHN C. MAROUS;
ROBERT W. CAMPBELL; RENE C.
MCPHERSON; FRANK C.
CARLUCCI; RICHARD R.
PIVIROTTO; PAUL E. LEGO;
WILLIAM A. POWE; GARY M.
CLARK; WILLIAM H. GRAY, III;
PAULA STERN; DAVID T.
MCLAUGHLIN; LEO W. YOCHUM;
MICHAEL H. JORDAN; ROBERT E.
CAWTHORN; GEORGE H.
CONRADES; DAVID K.P. LI;
ROBERT D. WALTER; CBS CORP,

f/k/a Westinghouse Elec.

(D.C. No. 99-cv-00596)

WILLIAM C. RAND, Stockholder Objector, owner of 100 shares of CBS Corporation,

<u>Appellant</u>

---

On Appeal from the United States District Court for the Western District of Pennsylvania
(D.C. No. 91-cv-00354)
District Judge: D. Brooks Smith

---

Argued January 23, 2004

Before: SLOVITER, MCKEE, and CHERTOFF, <u>Circuit</u> <u>Judges</u>

(Filed June 30, 2004)

---

William Rand, Sr.   (Argued)
William C. Rand
Coudert Brothers
New York, NY 10036

Attorney for Appellant

Richard D. Greenfield
Greenfield & Goodman
Royal Oak, MD 21662

Attorney for Appellee,
Daniel Mogell

Leonard Fornella
Heintzman, Warren, Wise & Fornella, P.C.
Pittsburgh, PA 15219

Attorney for Appellee,
Westinghouse Electric Corporation

Dennis J. Block
Cadwalader, Wickersham & Taft
New York, NY 10038

Joseph A. Katarincic
Thorp Reed & Armstrong, LLP
Pittsburgh, PA 15129

Attorneys for All Other Appellees

Howard J. Bashman (Argued)
Buchanan Ingersoll, P.C.
Fort Washington, PA 19034

Attorney for Amicus

OPINION OF THE COURT

SLOVITER, <u>Circuit</u> <u>Judge</u>.

Under the common fund doctrine, the court may award a shareholder-objector attorney's fees for successfully pursuing a shareholder derivative suit that confers a benefit upon the corporation. The question that we confront in this case is whether a successful shareholder-objector who represented only himself as a <u>pro</u> <u>se</u> attorney in such a suit is entitled to

attorney's fees.

# I.

Because we have published a prior opinion on another issue in this case in Zucker v. Westinghouse Electric Corp., 265 F.3d 171 (3d Cir. 2001), we repeat only those details that are relevant to the issue before our court. Shareholders of Westinghouse/CBS[1] filed a derivative suit and a related class action suit following the announcement of Westinghouse that it would suffer multi-million dollar losses because of several loans it made. Id. at 173. In the derivative suit they alleged that the officers and directors of Westinghouse grossly and recklessly mismanaged the corporation. Id. In the class action they alleged that Westinghouse had violated Sections 10(b) and 20 of the Securities Exchange Act of 1934, as amended (the Exchange Act), 15 U.S.C. §§ 78j(b), 78t (1988), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5 (1992), as well as Sections 11, 12(2), and 15 of the Securities Act of 1933, as amended (the Securities Act), 15 U.S.C. §§ 77$k$(a), 77$l$(2), 77$o$ (1988). The class action plaintiffs also alleged a claim for negligent misrepresentation under principles of Pennsylvania common law. In re Westinghouse Sec. Litig., 832 F. Supp. 948, 961 (W.D. Pa. 1993), aff'd in part, rev'd in part, 90 F.3d 696 (3d Cir.

1996).

In 1998, insurers of the officers and directors of Westinghouse agreed to pay damages to the class action plaintiffs on the condition that the plaintiffs in the derivative suit terminate that litigation.[2] Zucker, 265 F.3d at 173. In 1999, the parties in the derivative suit reached a settlement agreement, stipulating, inter alia, that the plaintiffs' attorneys in the derivative suit could submit to the court an application for attorney's fees and expenses of $750,000, which Westinghouse agreed to pay. Id. at 174.

The District Court approved the settlement for both the derivative suit and the class action suit. Id. Plaintiffs' counsel then requested attorney's fees and expenses of $750,000. However, Rand, a holder of 100 shares of Westinghouse stock and an attorney acting pro se, objected to the award on the ground that the settlement had not conferred a benefit upon Westinghouse. The District Court nonetheless awarded to plaintiffs' counsel fees and expenses in the amount of $582,443.

Rand, acting as a pro se attorney, filed an appeal to this court, contesting the fees award. We reversed the District Court's judgment on the ground that the

---

[1]  CBS Corporation is the successor to Westinghouse Electric Corporation. We refer to it hereafter as Westinghouse.

[2]  Several of the insurance policies covered claims in both cases and the insurers were not willing to pay for the settlements in both cases.

3

derivative litigation did not confer a benefit on Westinghouse and therefore plaintiffs' counsel was not entitled to any fee award. Id. at 175-78. We remanded the case to the District Court with instructions to deny the application of the plaintiffs' attorneys for fees and expenses. Id. at 178.

Following our remand order, Rand petitioned the District Court for an award of $250,000 as attorney's fees for his successful appeal. In support, Rand asserted that the $250,000 request represented one-third of the $750,000 that plaintiffs' counsel might have received but for Rand's successful intervention. He cited several class action cases in which the attorneys for the shareholder-objector received attorney's fees, ranging from 21% to 53% of the fund. In the alternative, Rand appended a lodestar calculation of $67,100 for attorney's fees (based on an $250 hourly rate) and $673 in expenses. Rand also submitted to the District Court a stipulation in which Rand and Westinghouse stated that Westinghouse benefitted economically from Rand's appeal and agreed to pay Rand $95,000 for attorney's fees and expenses.

The District Court concluded that Rand was not entitled to recover attorney's fees based on his pro se representation. The Court stated, inter alia,

> At first blush, it appears that Rand should be entitled to counsel fees. As a pro se attorney objector Rand

conferred a definite benefit upon the corporation by successfully challenging the award of attorneys' fee [sic] to plaintiff's counsel in the underlying derivative action. Rand represented himself, however. As a result, he did not incur any attorney fees for which he is personally responsible. Thus, an award of attorney's fees would not compensate him for expenses incurred in initially objecting and subsequently prosecuting the appeal.

App. at 6. The Court thus denied Rand's motion for attorney's fees and costs and declined to endorse the stipulation for $95,000 for attorney's fees. However, it approved the portion of the stipulation awarding Rand $673 for expenses.

Rand timely appealed, seeking reversal of the District Court's order and an award of $95,000 for attorney's fees. Appellees, Westinghouse and the directors and officers thereof, take no position on this appeal, except to acknowledge that they entered into the stipulation described above. Amicus Curiae Howard Bashman[3]

---

[3] In the posture of this case, there was no party who took the position that the District Court order should be affirmed. We asked Howard Bashman, Esq., to do so and are most appreciative

4

urges that although Rand successfully raised a shareholder objection, a pro se attorney should not be able to recover fees.

## II.

We exercise de novo review of "the standards and procedures applied by the District Court in determining attorneys' fees, as it is purely a legal question." Planned Parenthood v. Att'y Gen. of N.J., 297 F.3d 253, 265 (3d Cir. 2002). However, we review the District Court's findings of fact for clear error. Id. In this case, there are no disputed issues of fact. The District Court recognized that Rand had conferred a "definite benefit upon the corporation." App. at 6. We agree. That, however, is not the issue before us.

Rand argues that the District Court erred as a matter of law in holding that attorney's fees may not be awarded to an attorney who represented himself in a shareholder derivative suit even where the suit has benefitted the corporation. The Supreme Court has issued two opinions that guide our decision on this appeal: Trustees of the Internal Improvement Fund of Fla. v. Greenough, 105 U.S. 527 (1882), and Kay v. Ehrler, 499 U.S. 432 (1991).

### A. Trustees of the Internal Improvement Fund of Fla. v. Greenough

In Trustees, Francis Vose, a

_____

of his efforts.

bondholder of the Florida Railroad Company, sued the trustees of several realty companies to prevent them from wasting a land trust fund and failing to pay interest on its bonds. Vose ultimately succeeded and saved the trust fund a significant amount of money. Trustees, 105 U.S. at 529. Vose then petitioned for "an allowance out of the fund for his expenses and services" because he had borne "the whole burden of this litigation" for more than a decade and had "advanced most of the expenses which were necessary for the purpose of rendering [the litigation] effective and successful." Id. The courts below had approved the bulk of Vose's requests, including the fees for his solicitor and counsel, costs of court, and copying. Critically, they also approved an award for "personal services" and "private expenses." Id. at 537.

The Supreme Court approved of compensating Vose for his attorney's fees and court fees as a matter of "equity and justice." Id. at 536-37. Because Vose had "worked for [other bondholders] as well as for himself," the Court found that it would have been "unjust" to give other bondholders an "unfair advantage" by not requiring them to contribute to "the expenses which [Vose had] fairly incurred" in the course of litigation that had benefitted all bondholders. Id. at 532. The Supreme Court thus established the "common fund" doctrine as a federal common law doctrine that prevents the unjust enrichment of non-litigant beneficiaries at the litigant's expense. Accordingly, it affirmed the award for

5

reimbursement for attorney's fees and costs to Vose, the litigant whose actions resulted in the creation of the common fund for the benefit of himself and others.

Critically for our purposes, the Supreme Court denied Vose's petition for "personal services" and "private expenses" because such an award would have been without precedent in law or equity. Id. at 536-38. The Court found pivotal that Vose "was a creditor, suing on behalf of himself and other creditors, for his and their own benefit and advantage." Id. at 537. In denying Vose's request for payment of "personal services" and "private expenses," the Court distinguished the character of a trustee, who could properly receive a salary from the trust, from that of an interested objector such as Vose, who could not reap a salary:

> Where an allowance is made to trustees for their personal services, it is made with a view to secure greater activity and diligence in the performance of the trust, and to induce persons of reliable character and business capacity to accept the office of trustee. These considerations have no application to the case of a creditor seeking his rights in a judicial proceeding.

Trustees, 105 U.S. at 537-38.

In short, Trustees emphasizes that a person who draws a salary or other compensation from a trust or settlement fund should not have a personal stake in the fund and instead should objectively seek to maximize the settlement fund to the benefit of the corporation or group. The Court's refusal to award Vose a fee for "personal services" illustrates its unwillingness to set up financial incentives for objectors to pursue potentially unnecessary litigation to obtain a salary (or fees for "personal services") that might conflict with the best interest of the corporation or other shareholders. The Court thus denied Vose's request for fees for "personal services" because such compensation might reward and encourage potentially useless litigation by others seeking lucrative "salaries."

As with Vose, Rand is not a trustee of corporation nor is it his job description to objectively and selflessly protect it. Rand is a doubly interested party: he has a shareholder's interest in the corporation as well as an attorney's interest in obtaining attorney's fees. Because the conflict of interest as a lawyer and an objector-shareholder might lead him to take actions contrary to the best interest of the corporation, he is not entitled to a "salary" of attorney's fees under Trustees. As the District Court properly noted, awarding Rand attorney's fees potentially could "tempt" other lawyer-shareholders to "advance garden variety objections because of the prospect of an award of attorney fees for their personal service." App. at 10; see also Trustees, 105 U.S. at

6

537-38 (observing that an award for personal services may be "too great a temptation to parties to intermeddle" in affairs in which they had "only the interest of creditors, and that perhaps only to a small amount"). We note that Rand did not incur any financial liabilities for his work on this case. Failure to award Rand fees should not discourage other shareholders from raising meritorious objections in the future; it will only ensure that they pursue objections with the assistance of third-party counsel.

We also find instructive the Supreme Court's decision in <u>Alyeska Pipeline Service Co. v. Wilderness Society</u>, 421 U.S. 240 (1975). Although <u>Alyeska</u> did not address whether <u>pro se</u> attorneys may recover fees under the common fund doctrine, it underscored the limitations on the judiciary's power to award attorney's fees without congressional authorization. In <u>Alyeska</u>, an environmental group requested an award of attorney's fees for their third-party attorneys.[4] The plaintiffs acknowledged that the traditional American rule ordinarily prevents a prevailing litigant from recovering attorney's fees from the loser but urged the court to consider whether their fee request fell within any of the equitable exceptions to the American rule. <u>Id.</u> at 245. After determining that neither the bad faith nor the common fund doctrines applied, the Court of Appeals for the District of Columbia Circuit held that the plaintiffs were entitled to one-half of their fee request for acting to "vindicate important statutory rights" for all citizens under the "private attorney general" doctrine. <u>Id.</u> at 245-46 (internal quotation marks and citations omitted). The Supreme Court reversed that decision, holding that Congress may authorize new exceptions to the American rule, but the courts are not empowered to do so without statutory authorization. <u>Id.</u> at 262 ("[I]t is apparent that the circumstances under which attorneys' fees are to be awarded and the range of discretion of the courts in making those awards are matters for Congress to determine."). Absent a congressional directive that <u>pro se</u> attorneys should be able to recover attorneys' fees in derivative actions, we find no basis to create a new equitable exception for attorneys who represent themselves in shareholder derivative actions.

---

[4] Plaintiffs had sought to enjoin the Secretary of the Interior from issuing permits for the construction of the trans-Alaska oil pipeline. The district court initially granted a preliminary injunction against the issuance of permits, but dissolved it following the Secretary of the Interior's announcement granting the permits. Although pipeline construction was later enjoined as a result of the Mineral Leasing Act, Congress subsequently amended the Mineral Leasing Act "to allow the granting of the permits sought" by the defendant. <u>Alyeska</u>, 421 U.S. at 242-44.

## B.    Kay v. Ehrler

The distinction that the Supreme Court drew in Trustees – between the compensable work of an objective, disinterested party and the non-compensable work of an interested litigant – was further developed in its opinion in Kay v. Ehrler, 499 U.S. 432 (1991). Kay had brought a civil rights action challenging a Kentucky statute that precluded including his name on the primary ballot. Id. at 433-34. After he prevailed he sought attorney's fees under 42 U.S.C. § 1988, which provides for an award of attorney's fees to successful civil rights plaintiffs. Id. at 434. The Court of Appeals read the statute as assuming "the existence of 'a paying relationship between an attorney and a client.'" Id. at 435 (quoting Kay v. Ehrler, 900 F.2d 967, 971 (6th Cir. 1990)). The Supreme Court affirmed. It noted that the circuits are in agreement that a pro se litigant who is not a lawyer is not entitled to attorney's fees but were in conflict as to "whether a lawyer who represents himself should be treated like . . . a client who has had the benefit of the advice and advocacy of an independent attorney." Id. at 435. The Court considered whether such an award would run contrary to the statute's purpose of creating incentives for plaintiffs to obtain independent counsel who would successfully prosecute meritorious claims. Id. at 436-37.

The Court noted that an attorney who represents himself would be hindered by his inability to testify in the case and would deprive the litigation of the detached, reasoned judgment associated with third-party counsel. See id. at 437-38 (pro se attorneys deprived of independent judgment in "framing the theory of the case, evaluating alternative methods of presenting the evidence, cross-examining hostile witnesses, formulating legal arguments, and in making sure that reason, rather than emotion, dictates the proper tactical response to unforeseen developments in the courtroom"). The Court explained that unlike pro se representation, traditional third-party compensable representation is objective, unclouded by the emotional hindrances borne of first-hand involvement in a case. Id. Moreover, the Court emphasized that the word "attorney" generally connotes some form of an agency relationship, id. at 436 n.6; thus, Congress likely had contemplated "an attorney-client relationship as the predicate for an award under § 1988." Id. at 436.[5]

---

[5]    In Duncan v. Poythress, 777 F.2d 1508 (11th Cir. 1985) (en banc), a case implicitly overruled by the Supreme Court in Kay, the court addressed a similar question to the one at bar. The Honorable Paul H. Roney, in dissent, focused upon the agency relationship, writing:

> This case turns on the meaning of the word "attorney." Although the majority believes the "plain language" of section 1988

does not preclude an award of fees to a lawyer representing herself," we have simply been unable to find any definition which permits a decision that a pro se lawyer has an attorney. Set forth in an Appendix to this opinion are the definitions found in over two dozen dictionaries. Without exception they define the word "attorney" in terms of someone who acts for another, someone who is employed as an agent to represent another, someone who acts at the appointment of another. A basic principle of agency law is that "[t]here is no agency unless one is acting for and in behalf of another, since a man cannot be the agent of himself." 2A C.J.S. Agency § 27, at 592. For there to be an attorney in litigation there must be two people. Plaintiff here appeared pro se. The term "pro se" is defined as an individual acting "in his own behalf, in person." By definition, the person appearing "in person" has no attorney, no agent appearing for him before the court. The fact that such plaintiff is admitted to practice law and available to be an attorney for others, does not mean that the plaintiff has an attorney, any more than any other principal who is qualified to be an agent, has an agent when he deals for himself. In other words, when applied to one person in one proceeding, the terms "pro se" and "attorney" are mutually exclusive.

Id. at 1517-18 (Roney, J., joined by Henderson, J., dissenting) (footnotes

9

Foreshadowing <u>Kay</u>, we have long underscored the importance of reimbursing a successful plaintiff for financial debts to his or her attorney and providing that plaintiff with objective representation. In <u>Pitts v. Vaughn</u>, 679 F.2d 311 (3d Cir. 1982), and <u>Cunningham v. FBI</u>, 664 F.2d 383 (3d Cir. 1981), we denied the petitions of <u>pro</u> <u>se</u> non-lawyer litigants for attorney's fees under Section 1988 and the Freedom of Information Act (FOIA), respectively. Although both plaintiffs had been skillful enough to prevail in their respective cases, we noted that the fee-shifting rationale was premised, in part, upon financial indebtedness to a third-party attorney, and, in part, upon the presence of an objective, detached third-party attorney who is likely to prevent groundless or unnecessary litigation. <u>See</u> <u>Pitts</u>, 679 F.2d at 313; <u>Cunningham</u>, 664 F.2d at 386-87.[6]

More recently, we reiterated the importance of retaining rational, disinterested counsel in a case involving an attorney who represented his own child. In <u>Woodside v. School District of</u>

---

omitted) (emphases in original).

[6] <u>Pitts</u> and <u>Cunningham</u> also focused upon the difficulty of valuating a non-lawyer's <u>pro</u> <u>se</u> efforts. <u>Pitts</u>, 679 F.2d at 313; <u>Cunningham</u>, 664 F.2d at 386. Because Rand's <u>pro</u> <u>se</u> work as a licensed attorney does not present similar problems here, we need not discuss valuation issues.

<u>Philadelphia Board of Education</u>, 248 F.3d 129, 131 (3d Cir. 2001), we held that a parent-attorney who successfully represented his child in an action under the Individuals with Disabilities Education Act, 20 U.S.C. § 2000 (IDEA), could not be awarded attorney's fees under the statutory fee-shifting provision. Because the "danger of inadequate representation is as great when an emotionally charged parent represents his minor child as when the parent represents himself," providing the parent-attorney with an award of attorney's fees would encourage and sanction potentially sub-par or deficient representation, rather than requiring the party to seek "independent, emotionally detached counsel." <u>Id.</u>; <u>see also</u> <u>Doe v. Bd. of Educ. of Balt. County</u>, 165 F.3d 260 (4th Cir. 1998) (denying parent-attorney's petition for fees under IDEA for same reasons).

Similarly, after the <u>Kay</u> decision the courts of appeals have denied attorney's fees to <u>pro</u> <u>se</u> attorneys under a variety of fee-shifting statutes, including the Equal Access to Justice Act (EAJA), FOIA, and Title VII. <u>See, e.g.</u>, <u>Kooritzky v. Herman</u>, 178 F.3d 1315, 1319 (D.C. Cir. 1999) (denying attorney's fees for <u>pro</u> <u>se</u> attorney under EAJA); <u>Hawkins v. 1115 Legal Serv. Care</u>, 163 F.3d 684, 694-95 (2d Cir. 1998) (denying attorney's fees for <u>pro</u> <u>se</u> attorney for civil rights violations); <u>Burka v. United States Dep't of Health & Human Servs.</u>, 142 F.3d 1286, 1290 (D.C. Cir. 1998) (denying attorney's fees for <u>pro</u> <u>se</u> attorney allegedly representing an undisclosed client under FOIA); <u>SEC v.</u>

<u>Price Waterhouse</u>, 41 F.3d 805, 808 (2d Cir. 1994) (denying attorney's fees for <u>pro se</u> attorney under EAJA).

Rand does not contend that <u>Kay</u> was decided incorrectly. Rather, he argues that <u>Kay</u>'s prohibition on compensating <u>pro se</u> plaintiffs in civil rights cases should not apply with equal force to attorneys who represent themselves in securities cases. Rand argues that unlike the plaintiffs in emotionally-charged civil rights cases who are without legal expertise and whose testimony could be necessary to advance the litigation, the shareholder-attorney in the common fund actions such as the one at bar is dispassionate, skillful, and unlikely to be called to testify. Rand's attempted distinction is unpersuasive. Because attorney's fees are awarded only to prevailing plaintiffs, we can assume a relatively equal legal acumen. Moreover, we have no reason to assume that shareholders who risk losing or have already lost considerable sums of money in their stockholdings will be substantially less emotionally involved in their suit than civil rights plaintiffs. Lastly, and perhaps most critically, the Supreme Court's opinion in <u>Trustees</u> – which involved the seemingly dispassionate issue of real estate funds – focused on the need for detached, objective counsel in order to counterbalance whatever pecuniary motives a party might have for bringing litigation. Rand has offered no support for his hypothesis that neutral third-party counsel is less desirable in the context of shareholder derivative suits than in civil rights suits.

We note that other courts also have rejected Rand's claims for attorney's fees for representing himself. In <u>In re Texaco Shareholder Derivative Litigation</u>, 123 F. Supp. 2d 169 (S.D.N.Y. 2000), <u>aff'd</u>, 2002 WL 126225 (2d Cir. Jan. 29, 2002), Rand sought attorney's fees for having served as a successful <u>pro se</u> attorney-objector whose objection conferred a material benefit upon the corporation. Although the district court denied his claim as untimely, it proceeded to address the merits of Rand's claim. <u>Id.</u> at 171-74. That court applied the "logic of <u>Kay</u> and its progeny" to deny Rand's request for attorney's fees because he had not acted as "independent, objective counsel." <u>Id.</u> at 173. Moreover, the court noted that rewarding attorney-objectors might deter other attorney-objectors, such as Rand, from retaining counsel based on the possibility of being able to "enrich [oneself] by recovering attorney's fees." <u>Id.</u>

We agree with the District Court that the logic of <u>Kay</u>, as well as <u>Trustees</u>, supports the District Court's conclusion that a rule barring attorney-objectors from recovering attorney's fees would blunt any temptation of attorneys to "advance garden variety objections" in order to recover a salary of fees. App. at 10. Denial of a fee award to attorneys who represent themselves will serve as a prophylactic to deter those attorneys, hopefully few, who may be guided by financial incentives to pursue unnecessary litigation or to provide

11

representation that is not sufficiently guided by objective, rational decision-making. And we decline to create such an incentive today.

### III.

To be clear, we affirm the continued vitality of the common fund doctrine and its ethos of making-whole litigants who pursued shareholder-objector actions that have conferred a material benefit upon a corporation.[7] We merely decline to endorse an interpretation of the common fund doctrine that creates untoward incentives for attorneys to pursue unnecessary actions for pecuniary gain or to pursue such actions without the benefit of the reasoned and detached judgment that attends the attorney-client relationship. For the foregoing reasons, we will affirm the judgment of the District Court.

---

[7] In his brief, Rand argues that he "is entitled at a minimum to an award of an incentive fee," an award that some courts have made to non-lawyers for their service in conferring a benefit on the class. We note that Rand effectively waived the possibility of an incentive fee during oral argument before us. We thus express no opinion as to whether a pro se attorney would be eligible to receive an incentive fee.